## STEWART BROTHERS *v.* LANGSTON & WOODSON.

1. A composition agreement entered into between creditors and their common debtor, whereby the former mutually agree to release to the latter a part of their claims upon payment of a certain other part, is a valid contract between each creditor and the debtor; and an offer by the debtor to pay one of the creditors the amount due him in accordance with the agreement, after all the others have received their pro rata part in full settlement of their claims, constitutes a legal tender of the debt due such creditor.

2. A general demurrer to a plea which substantially set forth such an agreement and tender as a defense to a suit by the creditor for the full amount of his original claim, should not have been sustained.

Argued December 13, 1897.—Decided January 20, 1898.

Complaint. Before Judge Reid. City court of Atlanta. March term, 1897.

On February 28, 1895, Langston & Woodson sued Stewart Brothers, a partnership composed of Charles D. and John L. Stewart, upon an open account for $158.94 for goods bought from January 7 to February 7, 1895. A special plea filed by the defendants was stricken, which ruling is assigned as error. This plea sets up the following: Defendants were indebted to plaintiffs, but they are not informed what the amount of the indebtedness was. Defendants conducted a retail grocery-store, and said indebtedness was contracted in that connection. They were unable to meet their obligations, the business became involved, and they were forced to give mortgages upon their stock of goods. On February 25, 1895, the following contract was made between defendants and the plaintiffs: Whereas Stewart Brothers are indebted to the undersigned in various amounts, and whereas certain parties hold mortgages on their stock of

goods, notes and accounts, it is agreed, that the mortgagees will not foreclose their mortgages for forty-five days, and that during that time all of the collections made by Stewart Brothers will be turned over daily to a committee of two of the undersigned creditors, to wit, J. E. Maddox and W. D. Woodson and J. B. Stewart, attorney, until the amount reaches fifty cents on the dollar on the claim of each of the undersigned, at which time said money will be turned over by said committee to each of the undersigned, and said payments will be in full settlement of the debt of each of the undersigned against Stewart Brothers; provided, that if at any time this arrangement is interfered with and the mortgages foreclosed, the amount in the hands of the committee will be paid to each of the undersigned pro rata. W. D. Woodson was the agent of plaintiffs in this transaction, and acting for them signed said agreement; he was given access to defendants' books under said agreement, and money was turned over to him as one of said committee. While the arrangement provided for by said contract was being carried out, J. B. Stewart, as attorney and agent for defendants, made the following additional contract with their creditors, including plaintiffs: Defendants were to procure and pay to each of the unsecured parties to preceding contract fifty per cent. in cash of amount then due, and said payment was to be accepted in full settlement of said indebtedness. Acting on said contract, defendants paid to each of the parties to said contract fifty per cent. of the account held, and said payment was accepted as payment in full, except plaintiffs herein, who, after payment had been made to other creditors, refused to carry out said agreement. On February 27, 1895, J. B. Stewart, as attorney for defendants, tendered to plaintiffs herein, in lawful currency of the United States, an amount equaling fifty per cent. of the amount at that time claimed by plaintiffs to be due to them by defendants, the same to be accepted under said contract in full settlement of the amount due by defendants. Plaintiffs declined to accept said amount. Defendants at all times since have been and now are ready to pay to plaintiffs the amount due by defendants to them.

*J. B. Stewart*, for plaintiffs in error.

*Rosser & Carter*, contra.

LEWIS, J.   The official report states the facts.

1. It is a well-settled rule of law that a creditor is not bound by an agreement to take less than the amount of his debt, unless it has been executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration.   Such is the language of our Civil Code, § 3735.   The reason for the rule is evident.   Such a promise, being without any consideration to support it, is a mere nudum pactum.   But this doctrine is usually limited in its application to single agreements entered into between a debtor and creditor, in which the rights of others are in nowise involved.   It is equally as well established that a contract is binding when it forms a part of a composition in which several creditors join, mutually agreeing, on account of the embarrassed or insolvent condition of their common debtor, to forbear pressing their claims to the full amount, and to release their debtor on payment of a certain portion of his indebtedness.   The new consideration which enters into and supports such an agreement is the undertaking of the other creditors to give up a portion of their claims.   For a collection of authorities on this subject, see 3 Am. & Eng. Enc. L. 386–389.   In the case of Perkins *v.* Lockwood, 100 Mass. 249, the doctrine is succinctly stated as follows: "The reason for upholding such an agreement is that the rights and interests of other parties become involved in the arrangement, and this affords a new and legal consideration for the promise.   It would be contrary to good faith for a creditor who has secured the advantage of such an arrangement to disregard its obligations by proceeding to enforce the balance of his demand; and the debtor is entitled to avail himself of this consideration in defense."   In the case of Brown *v.* Farnham, 48 Minn. 317 (51 N. W. Rep. 377), Vanderburgh, J., speaking for that court, says: "The composition deed is an agreement between the creditors and the defendant, which involves rights and interests common to all the creditors who join in it.   It is an agreement that each shall receive the amount or consideration stipulated

for, and nothing more, as the basis of the debtor's discharge from the debts due to such creditors. Each creditor must be presumed to act on the faith of the engagement of the others, and the beneficial consideration to each is the obligation of the rest to forbear; and the debtor secures to them a common fund for the benefit of all, so that all are mutually bound; and there is a consideration as between themselves, of which the debtor is also entitled to avail himself"; citing Perkins v. Lockwood, supra; White v. Kuntz, 107 N. Y. 515 (14 N. E. Rep. 423); Good v. Cheesman, 2 Barn. & Adol. 328; Goodrich v. Stanley, 24 Conn. 613, 621. See also Clark on Con. 194, and cases cited in note; 1 Beach on Con. § 443.

2. It only remains to be seen whether the principle above announced is applicable to the facts pleaded in this case. In the contract of February 25, 1895, embodied in the plea, it seems implied from its terms that the same was entered into by several creditors of the debtor, and that it is supported by the further consideration that certain mortgage-creditors would not foreclose their mortgages for forty-five days, so as to give the debtor opportunity to realize from his assets an amount sufficient to pay the compromise agreed on with the unsecured creditors. But the plea of this contract as a composition agreement is defective, in that it only alleges the "contract was made between the plaintiffs and the defendants in this case." The plea, however, further alleges that an additional contract was afterwards made in behalf of the defendants and their "creditors, including plaintiffs herein," whereby defendants were to pay to each of the unsecured creditors to the preceding contract fifty per cent. of the amount due them, which was to be accepted by them in full settlement of their indebtedness. The plea further alleges that said per cent. was paid to each of the other creditors, who accepted the same in full settlement; and that afterwards a like percentage was tendered to the plaintiffs, who refused to accept the same. A fair construction of the entire plea is that a mutual agreement was entered into by the unsecured creditors of the debtor, to take less than their claims, on account of the embarrassed, and probably insolvent condition of the debtor; by virtue of this

mutual arrangement of forbearance on the part of the creditors, the debtor was enabled to raise the amount agreed on in the settlement, and, in pursuance of the agreement, had actually paid all the other creditors, and tendered the defendants in error their pro rata portions. The plea might have been fuller and more explicit; but, in the absence of any special demurrer on this ground, it was not open to the general objection that it set forth no ground of defense. To allow a creditor, after he had entered into such an agreement, upon which all the others had acted, to repudiate his contract and sue for the entire amount of his original debt, would be sanctioning the perpetration of a fraud upon those who had surrendered a portion of their demands for the common benefit of all. We are clear that the court erred in sustaining the motion to strike this plea, and the judgment is accordingly

Reversed. All the Justices concurring.