SMITH & COMPANY v. MECHANICS NATIONAL BANK.

A plea which sets up, as the basis of the sole defense to a suit upon an unconditional contract in writing, a subsequent agreement in the nature of an accord and satisfaction, or a composition agreement between creditors, including the plaintiff, and the defendant, is defective when it fails to allege facts sufficient to put the plaintiff upon notice of the exact terms of such agreement and when and with whom it was entered into. When one ground in a demurrer to such a plea by the plaintiff specifically objects to a defect of this character therein, the judgment of the court below striking the plea will not be reversed, although the judge in his order sustaining the demurrer may have based his ruling on an entirely different, and even erroneous reason.

Argued May 24, — Decided July 21, 1899.

Complaint. Before Judge Reid. City court of Atlanta. December 13, 1898.

King & Anderson, for plaintiffs in error.

Hammond, Skeen & Langley, contra.

LEWIS, J. The Mechanics National Bank brought suit in the city court of Atlanta, against O. A. Smith & Co., on an un-

conditional promissory note for $3,000, made by O. A. Smith & Co., payable to the order of Moody & Brewster, and by the latter indorsed. To this action the defendants pleaded, admitting the execution of the note sued on, but denying their liability on substantially the following grounds: During the time that Moody & Brewster were engaged in business and before the firm failed (which failure took place on May 21, 1898), defendants executed to Moody & Brewster a large number of promissory notes for accommodation only. Upon the failure of Moody & Brewster all the assets of that firm were placed in the hands of a receiver. Thereupon defendants ascertained that several banks in the city of New York held various notes indorsed by defendants, which had been pledged with said banks by Moody & Brewster as collateral for advances made them, or which had been discounted with said banks, and that the total of these claims amounted then to about $43,000. Among these banks was the Mechanics National Bank, which held two notes, the one sued on in this case and another. Having ascertained these facts and that the various notes held by the New York banks would soon mature in such amounts as to seriously embarrass defendants, they sent an agent to the city of New York for the purpose of arranging with all of said banks for an extension of the indebtedness for such a period of time as to render it practicable for the defendants to meet the same as it matured. This agent approached all the banks, and detailed the situation to them, each bank being informed that any agreement effected with it would be conditional upon similar agreements effected with all the New York creditors. By reason of this conference between the defendants' agent and the New York creditors, and the correspondence which took place between said agent and the Mechanics National Bank, either directly or through persons in New York city representing the defendants and their Atlanta agent, an agreement was finally made whereby the Mechanics National Bank agreed to surrender both of the notes, aggregating $6,000, to defendants, and to receive in lieu thereof three other notes, one for $1,500, maturing one year after date, another for $2,100, maturing two years after date, and the third for $2,400, maturing three years

after date, all the notes bearing interest at six per cent. per annum, payable annually. As security for the new notes the defendants agreed to insure the life of the senior member of their firm in the Aetna Life Insurance Company for $8,000, and to have the policy of insurance assigned to the Mechanics National Bank, agreeing to pay the premiums on the policy as long as said indebtedness should remain unpaid; and as further security the defendants agreed to furnish the Mechanics National Bank with the guarantee of Jacob Haas, of Atlanta, for the payment of the interest that might accrue on the notes and the premiums that would become payable on the policy of insurance pending the time for which indebtedness was extended, which security the Mechanics National Bank agreed to accept. The final terms of the agreement were reached in July, 1898. "In the meantime, similar agreements had been entered into between these defendants and each of the other creditors above referred to, in the city of New York, dependent, as above stated, upon each and all of said creditors agreeing substantially to the same terms." Having effected such agreements with the other creditors, defendants prepared a certain agreement, a copy of which was attached to their answer, signed by the defendants and to be signed by the Mechanics National Bank; and they also attached a copy of the agreement signed by Jacob Haas. At the same time they sent to the Mechanics National Bank the policy of insurance above mentioned, duly assigned to that bank in accordance with their agreement, and also sent them a check for one year's interest in advance on the $6,000 and the three new notes for the amount above stated, signed by the defendants. At the same time defendants executed similar contracts with all the other New York creditors, and they severally delivered up to the defendants the notes held against them, and accepted the insurance policies, payments of interest, etc. The Mechanics National Bank declined to execute the agreement and repudiated the contract.

In their plea defendants tendered the policy of insurance, the guarantee of Jacob Haas, the notes in satisfaction of the old ones, and payment of a year's interest on the notes; and they contended that the note sued on has in law been paid and

satisfied, and that no indebtedness owing by them to plaintiff is due and collectible. The plaintiff below demurred to the defendants' answer, upon the ground that the plea fails to set forth any valid contract for the renewal or extension of the note sued on, or any other good defense in law or equity against the action; and upon the further ground that "the alleged contract set forth in the defendants' plea for the extension or renewal of the note sued on is not set forth with sufficient definiteness and certainty, and is vague, both as regards the time when it was made and the terms of it, it being set forth in the plea, and especially in the 12th paragraph thereof, as a conclusion from personal conferences with defendants' agent and correspondence between said agent and the plaintiff, either directly or through persons in New York City representing the defendants and their Atlanta agent. Plaintiff demands that the defendants give the time and place of the contract and the names of the agents or persons who made the same, and the exact terms thereof, and that the defendants set forth the written portion thereof alleged to have been by correspondence, so that the plaintiff shall be informed with sufficient certainty as to be enabled to meet the plea." There were several other grounds in the demurrer, objecting specifically to certain other paragraphs in the petition, but, under the view we take of the case, it is not necessary to set these forth. After argument upon the demurrer the judge passed the following order: "Without considering matters of special objection urged to defendants' plea, I am of the opinion that the defense set up is not available in this court. The contract which would be a defense is the one into which plaintiff did *not* enter. The agreement set up obligated the plaintiff to enter into that contract, but the allegation is that it refused to do so. Until it does so, or is compelled by a court of equity to do so, there is no *legal* contract which can be enforced by this court. While this court may administer equitable principles, it must be done within *legal* rules; and since the contract which alone constitutes the defense of the defendants was never in fact made, this court, as a court of law, has nothing upon which to operate. With the agreement set up admitted, what rights follow to the

defendants? None, except to have the contemplated contract made or performed, and thus a court of law is helpless to grant relief; but a court of equity may specifically require the performance or alternatively grant the relief to which defendants would have been entitled if such contract had been made by the parties. It follows that this court is without jurisdiction, and that the plea of defendants should be stricken; and it is so ordered."

Under the view we take of this case, we do not deem it material to enter into a consideration of the particular reason given by the judge for striking the defendants' plea. If the demurrer should have been sustained on any ground therein taken, then the judgment of the court below should be affirmed, even conceding, for the sake of the argument, that the judge's reasons for such ruling were erroneous. It is difficult to determine from the allegations of the defendants' plea whether it was intended as a plea of accord and satisfaction, or whether it was intended to set up a composition agreement between creditors and a common debtor, whereby the former mutually agreed, on account of the financially embarrassed condition of the latter, to relinquish to him his original debts upon the execution by him of another agreement extending time for the payment of the debt, with some security. As ruled by this court in the case of *Stewart* v. *Langston*, 103 *Ga*. 290, such composition agreements between creditors and their common debtor are not without consideration, although they involve a release of the debtor from a portion of his obligation under the original contract; "and an offer by the debtor to · pay one of the creditors the amount due him in accordance with the agreement, after all the others have received their pro rata part in full settlement of their claims, constitutes a legal tender of the debt due such creditor." But whether we treat the plea in this case as one intending to set up accord and satisfaction or as a composition agreement with creditors, it makes no difference for the purposes of this argument. To say the least of it, the defendants rely upon a subsequent agreement entered into between them and the plaintiff in lieu of their original undertaking; and they claim a sufficient consideration in law to support the contract

relied upon in their defense.   If it is valid and binding be-
tween the parties, it necessarily operates to rescind the contract
sued upon.   It follows, therefore, that they should disclose in
their pleadings the nature and terms of this contract with suf-
ficient certainty and fullness to put the plaintiff upon notice of
what they expect to prove and exactly upon what they rely in
their defense.   The plea seems to make as the basis of the new
agreement offered in defense to the action similar agreements
entered into with other creditors, but it does not set forth with
any fullness or clearness the nature of such agreements.   It
alleges in general terms that "about the same time these de-
fendants executed similar contracts with all the other said New
York creditors," and in another connection alleges, "The final
terms of this agreement [referring to the one with the plain-
tiff] were reached on or about the middle of July, 1898.   In
the meantime similar agreements had been entered into between
these defendants and each of the other creditors above referred
to, in the city of New York, dependent, as above stated, upon
each and all of said creditors agreeing substantially to the same
terms."   It nowhere appears what was the nature of the agree-
ments with the other creditors or in what particular they were
similar to the one made with the plaintiff; nor does it definitely
appear in the plea that when the plaintiff was tendered the
proposed new contract to sign, it was aware of the terms of the
exact contract made with the other creditors.   From the entire
allegations in the answer, we are inclined to think that the
purpose of the pleader was not to set up the defense of accord
and satisfaction strictly speaking, but one in the nature of a
composition agreement between the defendants and their cred-
itors.   It is a well-established principle, and one recognized in
the decision of this court in *Stewart* v. *Langston,* supra, that
when an arrangement is made by a debtor with his creditors
to make a composition of his debts, the surrender of a part of
their claims by the other creditors, who are parties to the agree-
ment, is a valid consideration for each one giving up a part
and accepting the composition in discharge of his whole debt.
But it is essential that there should be a mutual agreement be-
tween the creditors ; and in order for such mutuality to exist

in the contract, we think it would necessarily follow that each creditor should know the terms and conditions upon which the others had agreed in the settlement of their claims. See 5 Lawson, R., R. & P. 2252, and authorities cited in the notes.

But apart from all this, which we think would render the plea defective as a composition agreement, it appears from the defendants' answer that the agreement in question was the result of "the personal conference between these defendants' agent and the correspondence which took place between said agent and said Mechanics National Bank, either directly or through persons in New York City representing these defendants and their Atlanta agent." When this correspondence took place, whether the correspondence was between the agent of the defendants and the plaintiff or was through some other person in New York City representing the defendants, and what that correspondence was, nowhere appears in the answer. As stated in the special ground of demurrer above quoted, this was simply a conclusion drawn from personal conference between the plaintiff and defendants' agent, and also from correspondence between said agent and the plaintiff, either directly or through persons in New York City representing the defendants and their Atlanta agent. The plaintiff below certainly had a right to demand, as it did in its special demurrer, that the defendants give the time and place of the contract and the names of the agents or persons who made the same, the exact terms thereof, and the written parts of so much as is alleged to have been by correspondence. These particulars, and not simply the defendants' conclusions from conferences and correspondence unrevealed, the plaintiff was entitled to know, or otherwise it could not with safety enter on the trial of the case upon its merits, not being sufficiently informed of the exact terms of the contract upon which defendants were relying to defeat the action. No amendment having been offered to meet so patent a defect, we will not reverse the judgment of the court in striking the plea and in entering up judgment in favor of the plaintiff against the defendants upon the note sued on.

*Judgment affirmed.*     *All the Justices concurring.*