## BROWN & FRANKLIN *v.* EVERETT RIDLEY RAGAN COMPANY.

1. When one of several creditors of a common debtor who is in failing circumstances ostensibly agrees with the other creditors and the debtor upon a compromise and settlement of all their claims at a specified per cent. on the dollar, and the creditor first referred to. by a secret arrangement with the debtor of which the others creditors are kept in ignorance, obtains from him money and promissory notes, in addition to what is paid under the terms of the general settlement, this latter transaction is in law fraudulent, the notes given in pursuance thereof are void, and the debtor may recover the money paid in pursuance of the secret preference thus given.
2. The debtor may, in defense to an action upon notes so given, not only set up that they are void, and defeat a recovery thereon, but may, by way of cross-action, claim and obtain a judgment against the plaintiff for the money paid in pursuance of the illegal supplemental agreement, if the amount claimed in the cross-action is within the jurisdiction of the court.
3. When there are several of such notes, and the plaintiff brings two separate actions thereon, and the defendant makes the same defense in each as to the validity of the notes, and also in each of his answers, prays for a recovery of the money paid to the plaintiff under the illegal contract, a verdict rendered for such money in his favor on the trial of one of the actions would bar a recovery thereof in the trial of the other action.
4. The rulings and charges complained of in the present case were, in the light of what is above laid down, erroneous.

Argued June 21, — Decided July 13, 1900.

Appeal.    Before Judge Hart.    Washington superior court. September term, 1899.

*Rawlings & Hardwick* and *Evans & Evans,* for plaintiffs in error. *Phillips & Phillips,* contra.

LEWIS, J.    Everett Ridley Ragan Co. brought two suits in the county court of Washington county against Brown & Franklin and H. M. Franklin, one on a promissory note for $100, and the other on two promissory notes of $100 each, besides interest.    These cases were appealed from the county court to Washington superior court, and were there consolidated and tried together before a jury before his honor John C. Hart, judge pre-

siding. The answer to each case involved the identical issues for trial. To the petition the defendants filed answers admitting the execution and delivery of the notes sued upon. They denied any indebtedness on the notes, stating, in substance, that, shortly before their execution, Brown. & Franklin Co., a corporation duly chartered under the laws of Georgia, and then engaged in the mercantile business at Tennille, Ga., and composed of the following incorporators, to wit, C. E. Brown, H. M. Franklin, and B. W. Franklin, became very much involved financially, and failed, being indebted to many different creditors in amounts aggregating many thousand dollars. One of the creditors was the plaintiff in this case, the amount of its claim being $1,087.81. After the Brown & Franklin Company had failed, a meeting of its creditors was held at Macon, Ga., on or about October 27, 1894, and there were present or represented at that meeting many different creditors, representing claims that aggregated many thousand dollars. Among those present, and among the most active of the creditors in getting up this meeting, was Ragan, a member of plaintiff's firm, with full authority to act for plaintiff. At the meeting he advocated an acceptance of a compromise of fifty cents on the dollar by the creditors, which settlement was agreed to by them, and by H. M. Franklin, who was acting in behalf of the Brown & Franklin Company. The meeting then adjourned with the understanding that the settlement was agreed to if carried into effect by the Brown & Franklin Company within the next few days immediately thereafter; but after this adjournment Ragan took Franklin off privately and threatened to break up the settlement unless his firm, plaintiff herein, got one hundred cents on the dollar, assuring Franklin that unless his firm did get one hundred cents on the dollar, he (Ragan) could and would break up the settlement, and he promised Franklin, if he would give him notes for $300, and pay him the balance of the fifty cents (amounting to $243.90) in money, thus making the entire one hundred cents on the dollar for plaintiff, that he (Ragan) would assist him in carrying out the settlement with the other creditors, and would keep the giving of the notes and the payment of this money (in excess of the compromise agreed on) secret from them, and help him in every way possible in the

matter.   Franklin, being very anxious to settle up the entire business, and being alarmed at the threats of Ragan about breaking up the settlement, was. forced to comply with the demands of Ragan, and in accordance therewith did give to plaintiffs the notes sued on, and pay to them $243.90 in money, which belonged to H. M. Franklin and C. E. Brown individually and jointly.   These were the notes sued on in this case.   The payment of the money was kept secret from all the other creditors both by Franklin and Ragan.   Defendants alleged that Ragan continued to use his influence with the other creditors to get them to stand to their promise, still concealing from them the fact that his firm was to get one hundred cents on the dollar. A few days after the giving of the notes and payment of the money the settlement was carried into effect, plaintiff still making it to appear to the other creditors that the Everett Ridley Ragan Company were only getting fifty cents on the dollar like the balance, and still keeping secret the existence of these notes and the payment of the money.   On account of these facts it was claimed in the answer that the notes sued on were absolutely fraudulent and void, and there was a prayer to recover back the cash paid to the plaintiff.   An oral demurrer was made by plaintiff's counsel to strike that part of defendants' plea in which they pleaded as a set-off the cash paid plaintiff over and above the demand of plaintiff against them; and this demurrer the court sustained, to which judgment defendants filed their exceptions pendente lite, and allege error thereon in the main bill of exceptions.

The case then proceeded to trial, and the following is substantially the testimony introduced in behalf of the defendants: On September 26, 1894, the Brown & Franklin Company made an assignment to J. M. Brown, assignee.   On October 18, 1894, there was a receiver appointed by the United States court to take charge of the assets of this concern and wind it up.   The company was indebted to Everett Ridley Ragan Company of Atlanta in the sum of $1,087.81, and Willis Ragan, of plaintiff's firm, came down to see defendants after the receiver had been appointed, and suggested a settlement.   The case was set for a final hearing about November 26th of the same year.   After Ragan went back to Atlanta, H. M. Franklin, of the defend-

ant corporation, went to Atlanta and saw him there, and Ragan agreed to accept fifty cents on the dollar for his claim. Franklin found he could raise the money to pay fifty cents. The final meeting of the creditors was had in Macon about October 29th, in the office of Hardeman, Davis & Turner, and all the other creditors agreed to accept fifty cents on the dollar for their claims. After the adjournment of the meeting Ragan took Franklin aside, and told him that he would not accept fifty cents on the dollar, but had to have one hundred cents on the dollar for his claim. He advocated the settlement publicly, but he said he would have to have one hundred cents on the dollar or he would break up the settlement. Defendants were not familiar with the practice in the United States court, and Franklin, who was acting for the company, had a dread of that court, and feared if he did not pay to Ragan what he asked for his firm, it would break up the other settlement, and very much against his will he accepted his proposition and agreed to it; gave him a check for the cash, $243.90, and three notes of $100 each for the balance, which were sued on in this case. Franklin further testified that he paid plaintiff's attorneys, Hardeman, Davis & Turner, the fifty per cent. agreed upon in the compromise by the creditors. Hardeman, Davis & Turner represented the other creditors also. They got fifty cents on the dollar for all their other creditors. Ragan had telegraphed to the witness, Franklin, to come to Atlanta, and this was the reason he went there to see him. Ragan advised the creditors to take fifty cents on the dollar for their claims, and told them he was only getting fifty cents on the dollar for his. The creditors had another meeting at the office of Hardeman, Davis & Turner, and Ragan made at this meeting a statement to everybody publicly that he was getting fifty cents on the dollar. He did not say anything in Atlanta about getting these notes, but told witness that after getting to Macon. "He said if we would give these notes, he would help us in the settlement. Another witness, C. E. Brown, testified that he was interested in the concern of the Brown & Franklin Company, and was present when Ragan came to Tennille. Ragan was the first man to mention settlement, and said he would settle at fifty cents on the dollar. He said if the Brown & Franklin Company would pay that, he

would do all he could to get the other creditors to accept it. There was also testimony that the accounts against these defendants after the settlement were transferred to J. D. Franklin, but it does not appear that he knew anything about it; and there was evidence to the effect that there was no consideration therefor.    Another witness, B. D. Evans, testified that in the fall of 1894 he was of counsel for the Brown & Franklin Company; that, after the filing of the bill in the United States court, negotiations for settlement were opened up by H. M. Franklin with plaintiffs' attorneys in that case.    At his instance, witness went with him to Macon and had an interview with Hardeman, Davis & Turner at their office respecting the settlement of the pending litigation.    Ragan was in Macon at the time, and witness thinks he was present at the settlement representing his firm.    One Leonard was also present representing Inman, Smith & Co.    The minds of all parties met, and it was agreed that the litigation should be settled upon the payment by defendants of fifty cents on the dollar and the court costs. The fifty cents was to be received by creditors in full settlement of their claims.    The parties to this settlement, as witness remembers, were Ragan representing Everett Ridley Ragan Company, Leonard representing Inman, Smith & Co., and Hardeman, Davis & Turner representing the plaintiffs in the bill, Franklin, and witness.    Witness saw Ragan and Franklin have several interviews.    Ragan, by his actions, impressed witness as assisting in bringing about the settlement, and he understood that the Everett Ridley Ragan Company were to receive in settlement of their claim the same as all the other creditors.    He did not know any better until Everett Ridley Ragan Company sent him the notes for collection, and witness told them he was disqualified from representing them.

There was testimony introduced in behalf of plaintiff, and some conflict in the evidence of Ragan and the witness, Franklin, Ragan claiming that he told Franklin when he came to Atlanta that he would not take less than one hundred cents on the dollar for his claim.    There was testimony tending to show he was not a party to the compromise agreement with the creditors.    He admitted, however, that he did not inform his own attorneys that he had received anything at all on his claim in

addition to the fifty per cent. that had been paid to his attorneys, and he thought they understood he was getting only fifty cents on the dollar.

After the close of the evidence and charge of the court, the jury returned a verdict for plaintiff for $300, and interest, costs of suit, and attorney's fees; whereupon defendants made a motion for a new trial, and to the judgment of the court overruling this motion they except.

1, 2. We think the court erred in sustaining the demurrer of counsel for plaintiff below to defendants' plea seeking a recovery of the cash paid to plaintiff over and above the amount agreed upon in the alleged composition had between the creditors. It will be seen from the above recital that there was testimony in this case to the effect that a composition was entered into among various creditors of the defendants below; that a member and representative of plaintiff's firm was active in bringing about this settlement, advised a compromise of fifty cents on the dollar, used his influence with other creditors to get them to accede to it, was present at the public meetings had by these creditors at Macon, and left the impression on their minds that he was willing to accept fifty cents on the dollar for the claim of his firm. After that settlement was agreed on, according to defendants' testimony, he saw one of them, who was representing his company, gave him to understand that if he was not paid one hundred cents on the dollar he had it in his power, and he would so act as to break up the settlement. This representative of defendants became alarmed, fearing the litigation in the United States court; and it was developed by the evidence that that litigation sought to set aside a deed of certain property this member of the company had made to his wife, the evidence on this subject showing that the deed was made long before any insolvency of the company; and laboring under this restraint and fear, he finally agreed to pay plaintiff one hundred cents on the dollar, and accordingly gave the notes sued on in this case, and paid besides that the cash money set up in the plea of set-off, and in addition to that paid plaintiff's attorneys the fifty per cent. agreed upon in the composition by the creditors. It seems that plaintiff even kept the getting of the money and the notes, in addition to the fifty per cent. paid

under the compromise, secret from its attorneys. Under this state of facts, this agreement had between plaintiff and defendants was manifestly null and void as between the parties themselves. It is contended, however, by counsel for defendant in error that these parties, in negotiating a settlement with the plaintiff, by which they received more than the amount agreed upon and accepted by other creditors, so far as the cash payment was concerned, were in pari delicto, and that therefore defendants were not entitled to recover back this money they had paid to plaintiff; but we do not think this transaction falls within the general principle of law that when parties are in pari delicto, a court of law or equity will leave them where it finds them. The influence brought to bear upon defendants, under their testimony, was in the nature of duress, the defendants being at a great disadvantage and being reluctantly forced, as it were, to accede to plaintiff's demands. While we do not know that this identical question has been made before this court in the history of its adjudications, yet we think, under well-established authority, that these transactions are void between the parties themselves, and that the debtor in such a case can recover back money paid by him in furtherance of such a fraudulent scheme.

In 6 Am. & Eng. Enc. L. (2d ed.) 394, it is declared : "Any advantage obtained by any creditor in any agreement of composition without the knowledge and consent of all the other parties to the composition is a fraud on the other creditors, and renders the composition void as to those innocent creditors." A vast amount of authority is cited upon that principle. But the same principle has been announced by our court in *Woodruff* v. *Saul,* 70 *Ga.* 271 (1). On pages 395 and 396 of the same volume of the Enc. of Law, it is declared : "Any agreement ·for such a secret preference of any creditor is void and will not be enforced by the courts, on the ground that such agreement is fraudulent and to enforce it would be against public policy. Notes and securities given under such secret agreement are void between the original parties and third parties who take them subject to equities. Money paid under a secret agreement as an inducement to the creditor to sign, or in excess of his claim under the composition, may be recovered

back by the debtor, as the law regards the payment as having been made under duress." Under each of the principles the author cites a large number of authorities from England, Canada, and many States throughout this Union. In Sternberg v. Bowman, 103 Mass. 325, it was held: "Promissory notes given by a debtor to his creditor for twice the amount really due, for the purpose of enabling that creditor to obtain a larger dividend under a composition deed between the debtor and all his creditors, are void as between the parties to them." In Willis v. Morris, 63 Texas, 458, it was held: "When a composition agreement has been made between a debtor and all his creditors, to pay them each in discharge of his debt a specified per centum of the amount owing, in a designated time, and there is a secret agreement between the debtor and one of the creditors that the debtor shall execute his note for the unpaid balance of his original debt, and such note is executed, its payment can not be enforced, for it is tainted with the fraud of the secret agreement." See the same principle announced in Morrison v. Schlesinger, 10 Ind. App. Rep. 665. In the opinion in that case on page 669 it is announced: "It is also the law that the debtor himself may set up the fraud in defense of an action on the secret agreement." A number of authorities are therein cited to sustain this proposition. See also Russell v. Rogers, 10 Wend. (N. Y.) 479. In Bean v. Brookmire, 2 Dillon's C. C. R. 108, it was decided: "Secret preferences paid as inducements to obtain signatures of creditors to composition deeds can be recovered by the debtor himself, or by injured creditors, or by an assignee in bankruptcy, who represents both debtor and creditor. Such recovery may be at law or in equity." In the opinion in that case on pages 115 and 116, it is announced: "The rules of law respecting the good faith to be observed by all who unite in a composition agreement are well known and well settled, and rest upon the soundest policy and upon the clearest principles of equity, commercial morality, and fair dealing. The temptation to obtain undue or secret advantages is so great, that the necessity for the severe rules which have been declared by the courts to repress it is undeniable. All must be open and fair. If a creditor, appealed to by his debtor, makes it a condition of his unit-

ing in a composition, that he shall have any advantage not enjoyed or made known to the others, the transaction can not stand either at law or in equity.    It is a fraud upon creditors, and they can avoid it.    It is treated as oppression or duress towards the debtor, and he may defend against any promise to pay made under such circumstances; or, if he has actually paid, he may recover back the amount, as the law does not consider the parties as being in pari delicto, nor regard the payments thus made as voluntary, and allows such recovery on grounds of public policy."    Quite a number of authorities are cited to sustain these principles.    See also Bradshaw *v.* Bradshaw, 9 Mees. & W. 28; Crossley *v.* Moore, 40 N. J. L. 27, where the same principle was decided, and where it was held that money paid by the debtor under such an agreement, where a composition has been made by creditors, in excess of the due proportion of such creditor's debt, may be recovered back, unless it be paid under such circumstances as to be regarded in law as a voluntary payment.    The jury in that case found that it was not a voluntary payment, and the court held that they were justified in this finding, that the money was obtained by coercion exercised by means of the situation of the parties, in fraud of the other creditors, and that the money was paid under the same compulsion.

The testimony in the present case introduced in behalf of defendants we think certainly makes out as strong a case of coercion.    The court, therefore, erred in sustaining the demurrer to that portion of the answer which seeks a recovery back of money thus paid by the debtor to the creditor, the amount claimed being within its jurisdiction.

3. Comment is unnecessary on the proposition announced in the third headnote, as its correctness appears upon its face.

4. One among the grounds in the amended motion for a new trial is, that the court committed error in charging the jury as follows:    "The court charges you that merely an agreement on the part of a creditor to receive less than his debt is not a binding agreement.    That is, if the Everett Ridley Ragan Company had stated that they would take fifty cents on the dollar, they would not be bound by that agreement."    Movants allege that this charge was erroneous, (1) because it was entirely inap-

plicable to the facts of this case; (2) because its tendency was
to confuse and mislead the jury as to the real issue involved;.
(3) because the Everett Ridley Ragan Company would have
been bound to accept fifty cents on the dollar, if they by their
actions induced other creditors to accept fifty cents on the dol-
lar and had publicly agreed to enter into composition for that
amount. We think the criticism of counsel on the charge of
the court is entirely just. It is true, as a general rule of law,
that a creditor is not bound by an agreement to take less than his
debt unless it has been executed by the payment of money, or the
giving of additional security, or the substitution of another·
debtor, or some new consideration. This question was thor-
oughly discussed in *Stewart* v. *Langston*, 103 *Ga.* 290. See
opinion of the writer on p. 292 et seq. While this principle
was in that case recognized as a general rule of law, it was fur-
ther announced : "It is equally as well established that a con-
tract is binding when it forms a part of a composition in which
several creditors join, mutually agreeing, on account of the em-
barrassed or insolvent condition of their common debtor, to .
forbear pressing their claims to the full amount, and to release
their debtor on payment of a certain portion of his indebted-
ness. The new consideration which enters into and supports
such an agreement is the undertaking of the other creditors to
give up a portion of their claims." See authorities therein cited
and quoted. That was a case involving a composition agree-
ment between creditors and their common debtor. It was there
held that "an offer by the debtor to pay one of the creditors
the amount due him in accordance with the agreement, after
all the others have received their pro rata part in full settle-
ment of their claims, constitutes a legal tender of the debt due
such creditor." It does not follow that all the creditors of a
debtor should necessarily enter into such composition, but all
who do so are bound by the agreement. See the quotation in
that case on page 292 from the case of Brown *v.* Farnham, 48
Minn. 317 (51 N. W. 377), where it is stated : "The compo-
sition deed is an agreement between the creditors and the de-
fendant, which involves rights and interests common to all cred-
itors who join in it." In the present case there was evidence
to show that all the creditors entered into the. composition,

though some testimony tended to show that a few did not. Evidently the bulk of the creditors entered into it, including all those who were parties to the suit in the United States court, which was the basis of the compromise and composition of the creditors, and which suit was dismissed in consequence of such settlement. We think the charge was not applicable to this case, and that the court should have submitted to the jury for determination the question as to whether or not plaintiffs had, by their conduct and declarations made through their representative, entered into this composition which was had with the other creditors, or induced and persuaded the creditors to enter into it and created the impression that they would enter into it themselves and settle at fifty cents on the dollar. He should have charged that such an agreement, notwithstanding it was an agreement to take less than the amount of their debt, was binding upon every creditor who entered into it, and a secret agreement to take more from the debtor, unknown to the other creditors, was a fraud upon them, and would render the notes sued upon void as without consideration, and would entitle the defendants to recover the cash pleaded as an offset.

Another ground in the motion excepts to the following charge of the court: "It is the contention of the plaintiff in this case that he made no such misrepresentation, but on the contrary stated all along that he was entitled to one hundred cents on the dollar, and that it was finally agreed among himself and certain members of the Brown & Franklin Company that Ragan was to sell Everett Ridley Ragan Company's debt to Mr. J. D. Franklin, a kinsman of certain members of the Brown & Franklin Co., and that he was to receive one hundred cents on the dollar for the debt of the Brown & Franklin Co., a portion in cash and these notes representing the balance. If you find that to be the truth of the case, then Everett Ridley Ragan Company ought to recover." Movants allege that this charge was erroneous: (1) because it tended to confuse and mislead the jury as to the real issue involved. (2) Because it is not a correct statement of the law, for the reason that if plaintiff would not have been entitled to recover in the event the accounts had been marked settled, then it would not have been entitled to recover although the accounts were transferred to J. D. Franklin, if the transfer

to Franklin was not a transfer for value and bona fide, and one
on which Franklin could have successfully enforced the demand
of plaintiff against the Brown & Franklin Co.   (3) Because the
submission by the court of plaintiff's contention in this matter
of the transfer to J. D. Franklin, without submitting the con-
tention of the defendants in reference thereto, was misleading, ·
was liable to confuse the jury, and was unfair to movants.　It
would seem from the allegations in the motion that the court
very strongly stated the contention of the plaintiff, and in no
part of his charge did he state the contention of the defend-
ants upon the same issue.　It is a well-settled rule of law, that
if the judge undertakes to state the contention of one party, he
should also state the contention of the other; and while it need
not necessarily appear in the same connection, yet his charge
ought somewhere to fairly state it. *City Ry.* v. *Findley,* 76 *Ga.*
311 (3); *Small* v. *Williams,* 87 *Ga.* 682 (2).

Another ground in the motion was, that the court erred in
charging the jury as follows:　"If you were to find from the
evidence in this case that Everett Ridley Ragan Co. had de-
ceitfully and knowingly deceived other creditors and got them
to accept less than Everett Ridley Ragan Co. received, then I
charge you that the law would estop him, for the reason that the
law does not become a party to any deceit." Objection was made
to this on the ground that it is not a fair statement of the law.
We think the charge implies that Everett Ridley Ragan Co.
must be guilty of a moral fraud, and that it was calculated to
mislead the jury by leading them to infer that the defendants
were liable unless such moral fraud had been perpetrated by
plaintiffs.　Under the contention of the defendants, supported
by their testimony, in view of all the authorities to which we have
called attention, and the principles of law therein announced,
we do not think the moral quality of the conduct of plaintiffs
or their representative in the transactions complained of in the
answer is necessarily involved.　If they are guilty of the con-
duct claimed, they are guilty of legal fraud, which would effect-
ually render null and void the entire transaction.　For instance,
as contended by counsel for plaintiffs in error, if the plaintiffs
below, even without intention to deceive anybody, had changed
their minds as to accepting the fifty cents on the dollar, but af-

ter notifying the other creditors that they would accept that much and agreeing to the composition had by the others, failed to notify them of the change in their intention, by taking cash and notes for the balance of their debt, they would nevertheless, under the law, be unable to collect the notes sued upon, and would be liable for the cash paid them over and above the fifty cents on the dollar. This, to say the least of it, would be a legal fraud under the principles of law herein announced.

In the light of this record and what is herein laid down as the law applicable to the present case, we think these rulings and charges of the court necessitate the grant of a new trial.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., who was disqualified.*