## SCHLOSS BROS. & CO. v. CHARLES STERN CO. et al.

Circuit Court of Appeals, Fifth Circuit. December 17, 1929.

No. 5678.

W. G. Cornett, of Athens, Ga., Raymond Stapleton, of Elberton, Ga., and Leonard Haas and E. Marvin Underwood, both of Atlanta, Ga. (Underwood, Haas & Gambrell, of Atlanta, Ga., on the brief), for appellant.

Lamar C. Rucker and Max Michael, both of Athens, Ga. (Green & Michael, of Athens, Ga., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellant, Schloss Bros. & Co., a Maryland corporation, brought suit on a past due note, for $23,292.56, made by the Charles Stern Company, a Georgia corporation, and indorsed by Aaron Cohen, appellees. Appellees admitted the issuance of the note for value and Cohen's indorsement, but defended on the ground that the Charles Stern Company had made a composition 'agreement with its creditors and appellant had been guilty of fraud in concealing the existence of the note sued on; that the business had been liquidated by a committee of creditors and appellant had accepted the final dividend payable out of the assets and had thereby compromised the claim and was estopped to now assert it. A motion to direct a verdict in favor of appellant at the close of the evidence was denied, and error is assigned thereto.

Stated as briefly as possible, the material facts disclosed by the record are these:

The Charles Stern Company was a corporation doing a retail clothing business in Athens, Ga., and Aaron Cohen was its president and owned all the stock. In September, 1927, the company could not pay its bills that were due and was being sued by some of its creditors. A meeting of creditors was held on September 10, 1927, and, based on an examination of the books and an audit of Sidney J. Hayles & Co., certified public accountants, the conclusion was reached by the creditors that the Charles Stern Company was solvent and could pay all its debts and return a substantial amount to the stockholders. It was decided that an extension should be granted, and that a note should be given to each creditor for the amount appearing on the books, payable July 15, 1928, and bearing 6 per cent. interest; that, if 25 per cent. of the notes was paid by January 15, 1928, the time for further payment should be extended to July 15, 1928, and, if an additional 25 per cent. dividend was paid between January 15, and July 15, 1928, a further extension would be given to January 1, 1929. An agreement in conformity with the above conclusions was drawn up and inclosed in a letter to each creditor by the committee. Appellant appeared on the books of the Stern Company as a creditor on open account for something over $3,000. It also at that time held the note in suit which did not appear on the books

and was unknown to the other creditors. Appellant received the letter and agreement, but took no action. In October, 1927, Cohen had an interview with Caston representing appellant in Baltimore. The question of the note was brought up and Cohen told appellant's representatives that it was not on the books, and, if the creditors' committee knew about it, it would prevent the settlement, but that he intended to pay it in full. Appellant did not in fact sign the agreement, but eventually accepted a note for $3,025.41, covering the open account. Thereafter, on January 12, 1928, a dividend of 15 per cent. on this note was sent to appellant and accepted. A second dividend of 10 per cent. was also accepted making the 25 per cent. necessary to secure an extension to July 15, 1928.

The business did not prosper as expected, and no further dividends were paid, but the creditors' committee continued to permit the business to run until February, 1928. An offer was then received for the entire assets, and on February 28, 1928, a letter was sent to appellant by the committee stating that the committee thought it for the best interests to sell the remaining assets for a sum sufficient to pay a dividend of 28 per cent. of the balance due on each account. That letter is as follows:

"We have previously sent to you a letter advising the status of Charles Stern Company's affairs and in this letter we gave you our recommendations. You are a creditor of Charles Stern Company and we have not had a reply from you to this letter.

"The situation cannot go on without the cooperation of creditors. You have already received 25% of your indebtedness and the proposition submitted to you was to pay you 28% of the balance. Up to the present time we have not had a single refusal and over 70% of the creditors in number, and 80% of the creditors in amount have accepted the proposition. Of course, the proposition is contingent upon the acceptance by all creditors.

"The Committee is absolutely convinced that its recommendations should be followed. There is no doubt in the world that bankruptcy would be ruinous and would pay practically nothing, and the Committee is not willing to jeopardize the interest of creditors by attempting to run the business and purchase the necessary spring merchandise that would be needed because the bills for this new merchandise must be paid in preference to the debts existing, and this Committee will not do this for reasons already given you. The

matter, therefore, resolves itself into bankruptcy, or this settlement.

"The offer made of 28% is not made by any stockholder of Charles Stern Company. The offer of 28% is to all creditors including banks and no preferences will be shown to any one, and no creditor, including the banks, has any security. The matter has reached the point where something must be done and done quick.

"We do not believe that there is any doubt that the Committee could sell the assets and pay you your 28%. This authority is given us in the signed contract. We prefer not to be forced to exercise it. We would rather have the cooperation of creditors.

"Won't you please, therefore, immediately reply to this letter by telegraph and send your note transferred in accordance with the previous letter sent you."

Appellant did not answer the letter of February 28th and did not agree to the proposition therein contained. However, the committee proceeded to execute a sale of all assets of the Stern Company, and certain collateral which had been deposited by Cohen in compliance with the original agreement, to S. S. Cohen and E. M. Cohen, respectively wife and son of Aaron Cohen. The act of sale recited that the sale was made "for and in consideration of the sum of One Dollar ($1.00) and of the deposit in the National Bank of Athens of funds sufficient to pay 28% of the principal due all creditors of Charles Stern Company, as shown by the report of S. J. Hayles & Company and by acceptances of creditors." In compliance with the terms of the sale, an amount sufficient to pay the dividend promised to the creditors of the amount of their claims appearing on the books was deposited, and the property was turned over. The deposit did not include enough to pay any part of the note in suit.

Thereafter, on March 9, 1928, a check for $635.33, something less than 28 per cent. of the balance due on the open account, was sent to appellant and accepted. The letter transmitting the check is as follows:

"We have previously sent you two checks representing a 25% payment for Charles Stern Company.

"This committee has liquidated this business, and I am enclosing herewith the liquidating dividend in the amount of $635.33."

The evidence above detailed is without contradiction. There is some conflict between the testimony of Edward Cohen and other witnesses for the defendant and the testimony of Caston as to what transpired after the sale had been consummated. It is certain, however, from all of the testimony, that appellants had at all times insisted upon the collection of the note in suit in full, always denied any intention to comproimse that claim, and that Edward Cohen knew this.

Appellees rely on the case of Brown and Franklin v. Everett-Ridley-Ragan Co., 111 Ga. 404, 36 S. E. 813, which holds that, where several creditors of a common debtor who is in failing circumstances agree to a composition and settlement in full, for less than 100 cents on the dollar, and one of them by a secret agreement with the debtor obtains from him money or promissory notes in addition to what is paid under the terms of the general settlement, the special agreement is in law fraudulent, and the notes given in pursuance thereof are void. That case but states the general rule, the underlying principle of which is that the secret agreement is a fraud upon the other creditors by which they are injured by being induced to take less than the full amount of their claims and release the debtor. 5 R. C. L. 871, par. 5. However, it has been held that a creditor having two separate claims may withhold one and agree to the composition for the other, Deering v. Cox, 6 Greenl. (Me.) 404, and by consenting to a composition a creditor does not lose his rights against the property of the debtor not surrendered to the assignee, Cator v. Blount, 41 Fla. 138, 25 So. 283. It is also well settled that fraud and injury must concur to vitiate an agreement, and estoppel does not arise, unless a party has been induced to alter his condition to his detriment, Ming v. Woolfolk, 116 U. S. 599, 6 S. Ct. 489, 29 L. Ed. 740.

As applied to the facts in this case, Brown & Franklin v. Ragan, supra, and other cases to the same effect, are not in point. Here the creditors' agreement was merely to grant an extension and was entered into on the assumption that the Stern Company was solvent and everyone would be paid in full. If the doubtful proposition be conceded that appellant by its initial silence as to the note in suit was guilty of fraud, there was no injury to any one thereby.

Appellant had two claims against the Stern Company, one on the note, secured by the indorsement of Cohen, and one on an open account, and did not receive anything by its silence that it did not already possess. No creditor was induced to agree to accept less than the full amount of his claim, and no creditor was injured by appellant's silence.

The District Court correctly ruled on the question of fraud in the initial concealment of the note, as outlined above, but left it to the jury to say whether the note was intended to be compromised by the liquidation of the affairs of the Stern Company and the payment of the final dividend, and whether appellant had agreed to that compromise by accepting the final check.

It may be conceded that by acceptance of the last check plaintiff was estopped to deny its compromise of the open account appearing on the books of the Stern Company, but it is plain that no compromise of the note in suit was intended. The written evidence in the record should be construed together as part of one transaction. Bailey v. Railroad Co., 17 Wall. 96, 21 L. Ed. 611. That evidence is susceptible of but one construction. The extensions of the note in suit were unknown to the creditors' committee. The first letter and the agreement sent out by the creditors' committee referred only to the accounts appearing on the books, which did not include the note. There is nothing in either the letter of February 18, submitting the proposition to sell the assets, or in the letter of March 9, transmitting the check of the final dividend, to indicate that a compromise of the note was in contemplation of the parties. Furthermore, the whole extension agreement was based on the debts appearing on the books of the Stern Company, as shown by the audit of its books by Sidney J. Hayles & Co. The terms of the act of sale above quoted show conclusively that the sale was to be made for a sum sufficient to pay 28 per cent. of the principal due all creditors of Charles Stern Company as shown by the report of the said accountants. The purchasers at that sale were not bound to pay any part of the note in suit. One of them, Edward Cohen, had full knowledge of the note at the time the purchase was made, and, of course, knew that a proportion of the note was not included in the amount deposited. The note in suit was not considered in the settlement, and appellant did not receive anything in compromise of it.

The construction of written evidence is usually for the court. Bliven v. New England Screw Co., 23 How. 420, 16 L. Ed. 510; Hamilton v. Liverpool, etc., Ins. Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419. The correct construction of the written evidence in this case would lead inevitably to the conclusion that no compromise of the note was intended nor accepted. In that state of the evidence there was nothing to submit to the jury. The rule is well settled that, in federal courts, whenever the evidence is all in favor of one party, or so clearly preponderant in his favor, that in the exercise of sound discretion the court would be justified in granting a new trial, if the jury should decide against him, a verdict in his favor should be directed. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Small v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597.

It follows that the overruling of the motion to direct was error.

Reversed and remanded.