35910.   ALLEN *v*. REED *et al.*

Decided January 17, 1956.

*Pickett, Pickett & Pickett,* for plaintiff in error.

*Wood & Tallant,* contra.

QUILLIAN, J. ■ The defendant complains that the trial judge erred in striking an amendment to the answer. The amendment alleged: "That subsequent to the execution of the written contract between the parties in this case and pursuant to the intentions of the parties thereunder W. C. Allen, on the one part, and J. E. Reed, representing himself and W. H. Reed, on the other part, entered unto an agreement in settlement of all their differences and disputes arising from their relationship in business, which said agreement was made in the presence of Miss Ethel Atherton, employee of said Allen, during July 1954, the terms of which agreement were executed by Miss Ethel Atherton on behalf of said W. C. Allen and accepted and agreed to by J. E. Reed, acting on behalf of himself and W. H. Reed, plaintiffs in this case." This was a plea of accord and satisfaction. *City of Atlanta* v. *Gore,* 47 *Ga. App.* 70 (169 S. E. 776). A plea of accord and satisfaction is defective when it fails to allege facts sufficient to put the plaintiff on notice of the exact terms of the agreement or compromise relied upon. *Smith & Co.* v. *Mechanics National Bank,* 108 *Ga.* 211 (33 S. E. 857). In *Nance* v. *Winship Machine Co.,* 94 *Ga.* 649 (3) (21 S. E. 901), an agreement similar to that set up in the amendment offered by the defendant was held not to set up any defense. The trial judge did not err in striking the amendment for the reasons assigned.

■ Error is assigned on the trial judge's ruling excluding testimony concerning the compromise between the plaintiffs and the defendant. Testimony offered for the purpose of proving an accord

and satisfaction is not admissible where the answer has not set up this defense. *Ingram* v. *Hilton & Dodge Lumber Co.*, 108 *Ga.* 194 (1) (33 S. E. 961).

■ It is the contention of the defendant that the charges made against the defendant for the trucks being overweight were chargeable against the plaintiffs under paragraph ten of the contract which provided: "10. It is mutually agreed that lessor shall pay at its own sole expense all operating costs upon the operation of said equipment unless otherwise specified herein or by future written agreement."

Paragraphs 1 and 7 of the contract read: "1. The purpose of this lease is to furnish equipment to Allen for the hauling, transporting, carrying and shipping of products processed and traded in by Allen to any point within the territorial limits of shipping of any item or products used by Allen in its regular course of business from any point in the United States to destinations designated by Allen it being expressly provided that on all such shipments Allen will comply with the regulations of the Interstate Commerce Commission, and the States and territories into and from which shipments are made. . . 7. It is mutually agreed that Allen will operate all vehicles under this lease in compliance with the rules and regulations of all Federal and State regulatory bodies and in compliance with all statutes, laws, ordinances of all Federal, State or municipal bodies. . ."

Under the above-quoted provisions of the contract the defendant was restricted to the lawful operation of the vehicles. The contract further stipulated that the defendant would have complete control of the vehicles. The stipulation that put the complete control of the vehicles in the lessee defendant, relieved the lessors of conducting such operations. Nor can it be seriously asserted that the loading of the vehicles was not a part of the operation.

The contract could not be reasonably interpreted to mean that the plaintiff would be liable for charges made against the defendants as the result of acts which the contract specifically prohibited. Even if the penalties paid by the defendant consequent upon his operating the truck burdened with a load weighing in excess of that allowed by the State could be denominated tax, they were not such tax as was contemplated by the lease contract. The taxes referred to in the contract are those that were to accrue on account

of the lawful operation of the vehicle, and not those imposed as a result of a violation of the law.

■ The defendant undertook to avoid liability for hire of the truck and to bolster his defense of recoupment by showing that the plaintiffs had furnished drivers who overloaded the vehicle and drove it into States where the penalties were assessed.

The explicit words of the contract placed the operation of the leased equipment under the direction and within the control of the lessee defendant, and without question the loading of the trailer was a part of its operation, as was driving the same over the roads of the States where the penalties were exacted of the plaintiffs. The clause of the contract referred to reads: "6. It is mutually agreed that the operation of all leased vehicles and equipment shall be under the direct supervision and control of Allen and shall be operated only by the employees and/or contractors of Allen."

■ A valid written contract under which the account sued upon arose was attached to and made a part of the petition. Neither the answer nor defensive pleadings filed in the case denied the execution or validity of the contract. The only defense interposed by the defendant or that the defendant undertook to prove involved the direct contradiction of the terms of the written contract, and hence constituted no legal defense to the plaintiffs' action. The plaintiffs' counsel stated in open court that a certain credit would be allowed to the defendant, which was tantamount to reducing the amount sued upon. The account thus reduced was proved by competent and uncontradicted evidence. It follows that a verdict for the amount of the account, as originally alleged in the petition, minus the credit, was demanded by the evidence, and the court properly directed a verdict in favor of the plaintiff for that amount.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*