**AVIGNONE et al. v. ROUMEL.**

(Court of Appeals of District of Columbia. Submitted January 4, 1926. Decided May 3, 1926. Motion for Reconsideration or Correction of Opinion Denied May 29, 1926.)

No. 4350.

**I. Injunction ⟨⬗⟩113.**

Plaintiffs in suit to enjoin violation of building line restriction *held* not guilty of laches barring relief.

**2. Estoppel ⟨⬗⟩78(1)—That plaintiff, suing to enjoin violation of building line restriction, had consented on unfulfilled condition to abrogation of restriction, held not to bar his right to relief.**

That one of plaintiffs in suit to enjoin violation of building line restriction had signed written instrument purporting to abrogate such restriction on unfulfilled condition that signatures of all property owners affected be procured *held* not to bar his right to relief.

**3. Injunction ⟨⬗⟩127—In suit to enjoin violation of building line restriction, written instrument purporting to abrogate restriction, signed on unfulfilled condition by one of plaintiffs, held improperly admitted.**

In suit to enjoin violation of building line restriction, written instrument purporting to abrogate such restriction,.which had been signed by one of plaintiffs on unfulfilled condition that signatures of all property owners be procured, *held* a nullity, and improperly admitted in evidence.

**4. Injunction ⟨⬗⟩62(3).**

Alleged change from residence to business section *held* insufficient to render inequitable enforcement of building line restriction.

**5. Evidence ⟨⬗⟩471(29)—In suit to enjoin violation of building line restriction, testimony as to witness' understanding of restriction held improperly admitted.**

In suit to enjoin violation of building line restriction contained in covenant between parties, testimony by particular witness that he understood restriction as intended only to keep back residences, and as having no object except as related to residences, *held* improperly admitted, as mere conjecture, and witness' own interpretation of legal effect of covenant.

**6. Injunction ⟨⬗⟩127—In suit to enjoin enforcement of building line restriction, evidence as to effect of enforcement and damage, or not, to plaintiffs, held improperly admitted.**

In suit to enjoin violation of building line restriction, evidence of supposed effect of enforcement of restriction on market value of properties, and evidence as to whether violation of restriction would damage plaintiffs, *held* improperly admitted.

Appeal from Supreme Court of District of Columbia.

Suit by Natale Avignone and others against Constantine Roumel. Decree for defendant, and plaintiffs appeal. Reversed and remanded, with directions.

A. A. Alexander, of Washington, D. C., for appellants.

W. G. Gardiner and J. W. Tomlinson, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

GRAHAM, Acting.Associate Justice. On the 27th day of January, 1925, the appellants, Abe Stein, Ethel Stein (his wife), Natale Avignone, and Corinne Avignone (his wife), filed their bill in equity in the Supreme Court of the District of Columbia, against the appellee, Constantine Roumel: The bill prayed for an injunction to restrain the defendant in the bill from erecting any extension of his building located on lot 76 in square 2560, in said District of Columbia, in violation of a certain building line restriction contained in a certain covenant or agreement dated June 10, 1897, and hereinafter referred to, for a mandatory injunction to compel the removal of a portion of such extension already made, and for other relief. The covenant in question is the same as that involved in Castleman et al. v. Avignone et al., —— App. D. C. ——, 12 F.(2d) 326, decided by this court April 5, 1926. Inasmuch as said covenant, the facts connected with its execution, and the condition and occupancy of the premises included therein, are fully set forth in the case cited, the same will not be further detailed here, except in so far as may be made necessary by the different parties, issues, or facts involved.

The appellants Natale Avignone and Corinne Avignone, at the time the bill of com-

plaint was filed herein, were the owners in fee simple of lot 96, known as No. 2429 Eighteenth street, N. W., located in the 525-foot strip of land included in said agreement, through the chain of title set out in Castleman et al. v. Avignone et al., supra. The appellants Abe Stein and Ethel Stein were the owners of lot 77 of the same subdivision, known as No. 2467 Eighteenth street, N. W. They derived title by sundry mesne conveyances from Catherine C. Dolloway and Edward Dolloway, her husband, parties to said agreement of June 10, 1897. Their deed of conveyance, dated September 2, 1919, contained the restrictive covenants named in said agreement. The appellee, Constantine Roumel, was the owner of lot 76 of said subdivision, known as No. 2465 Eighteenth street, N. W. He derived title thereto by sundry mesne conveyances from said Catherine Dolloway and Edward Dolloway, her husband, and his deed of conveyance, dated April 16, 1923, likewise contained said restrictive covenant. All these properties front upon the east side of Eighteenth street, N. W., in the District of Columbia. The said property of Roumel is immediately south of and adjoins the property of the Steins. The property of the Avignones is 300.5 feet south of the Roumel property.

The buildings on said lots 76 and 77 are of brick, having three stories and a basement each. The first floor of the Stein building was used at the time of filing the bill herein as a florist's shop, while the remainder thereof was occupied by the family as a residence. The Roumel building was occupied as a residence, the first floor having been used at times for business purposes. Both of these buildings were erected in 1902, in substantial conformity with the building line covenant contained in said agreement of June 10, 1897.

All the conditions of said covenant were acquiesced in and observed by all the owners of lands affected thereby until the breach of the same made the basis of the proceedings in Castleman et al. v. Avignone et al., supra. In the case cited, a decree was entered by the Supreme Court permanently enjoining the defendants Alfred Castleman and Rebecca Castleman from further erecting and from further maintaining a partially completed extension of their brick building extending beyond the building line, in violation of said covenant, which decree was filed January 28, 1922. Since the rendition of this decree, no further work has been done upon the Castleman building, and at the time of the commission of the various acts by the appellee, Roumel, complained of herein, the said extension was standing in a partially finished condition.

On December 27, 1924, appellee, Roumel, filed an application for a building permit on lot 76, in the office of the building inspector of the District of Columbia, describing the proposed improvements as: "Lower floor: New front and show windows. Rear of house to have new kitchen on 2 and 3, second and third floors; new kitchen sink and heating plant; new rear porches." In this application, the following appears: "(11) Will front wall of building, when altered, project beyond the front walls of other buildings in block? No."

On December 29th a temporary permit to tear down the front of the building was issued, and thereafter, on January 3, 1925, a permanent permit was granted to the appellee for permission to "lower floor, build new front and show window, min. repairs as per plans. * * *" The plans accompanying the application, and appearing of record here, gave no indication that it was intended to project the proposed repairs beyond the building line as fixed by the covenant, although the architect employed by appellee testified, on the hearing herein, that a part of the prepared plans, which were not filed, did show the same.

At or about the time of the issuance of the permanent permit to repair, the attorney for the appellants here, then representing Natale Avignone and Corinne Avignone, informed the architect employed by the appellee, Albert S. J. Atkinson, that the appellants would insist upon compliance with the aforesaid covenant in the making of said repairs by appellee, and at the time showed to the said architect and thoroughly explained to him the decree entered in the Supreme Court in Avignone et al. v. Castleman, supra, together with copies of the files in said cause, disclosing the issues therein, and that a similar injunction would be sought if any attempt was made by appellee to build out beyond the restricted building line fixed by said covenant.

Work began on the proposed improvement on December 23 or 24, 1924, and continued thereafter until January 21, 1925, before any brickwork was done. In the meantime the front of the old building was removed, and excavations made. On January 21st, brickwork on the footing started. The appellants Abe Stein and Natale Avignone testify that they first noticed on Monday, January 26th, that the new front of the Roumel building was being built out to the lot line, little work having been done since January 21st on account of weather conditions. Stein

then went to consult with Franz H. Ridgway, one of the attorneys of record in Avignone et al. v. Castleman et al., supra, relative to legal proceedings to stop the building operations in violation of the aforesaid covenant. Ridgway referred him to Arthur A. Alexander, who was thereupon employed and appears as attorney of record for appellees herein. Mr. Alexander at once began the preparation of a bill for injunction. After work had been finished on January 26th, the appellee, Roumel, asked the appellant Stein if he might proceed with his work at night. This was refused by Stein, and he was advised that, if he tried to build out to the lot line, his work would be stopped. He then went to the office of the building contractor and directed him to assemble his force and "rush the work" during the night, agreeing to pay double time therefor. Eighteen men were employed during the night, and from this time until a temporary injunction was served upon Thursday, January 29th, work was pushed as rapidly as weather and circumstances would permit. It also appears that on January 19th Mr. Ridgway had visited the Roumel building, had ascertained that it was proposed to build the building out to the lot line, and had then told the foreman in charge he was going to take steps to stop the work.

The bill for injunction was completed and filed January 27th. On January 28th a deputy United States marshal visited No. 2465, the Roumel premises, and attempted to get service upon Roumel in said injunction proceeding. He was unable to find the appellee, and false and misleading statements were made to him by those in charge of the building operations, tending to deceive him. On the following day, being totally unable to find the appellee, or any one who would admit being in charge of the work, and a temporary injunction having issued from the Supreme Court on the same day, service was had by posting copies of said injunction upon the building. At the time of service of the temporary injunction, the front walls of the building were up two stories and are shown to have been about 85 per centum completed.

The defendant in the court below answered the bill, and a hearing was had, many witnesses being heard on each side. A final decree was entered March 12, 1925, which dissolved the temporary injunction, dismissed the bill, at complainants' costs, denied the oral application of the defendant in the cause for damages against the complainants therein, and certified the issue of complainants' claim against the defendant for damages to the law division of the Supreme Court for trial. The appellants appeal from that decree to this court, alleging various errors.

It will not be necessary for the court to again examine and discuss the various matters of law involved in the case at bar; these are fully covered in the Castleman Case, supra, and are equally applicable here. It only remains, therefore, to determine whether the record now before us presents any different state of facts from that appearing in the Castleman Case, which calls for a different conclusion than that there arrived at. Much additional testimony was introduced on the hearing on three phases of the case, namely, the alleged laches of the appellants, the alleged change of the character of the premises involved from residential to business properties, and a consequent lack of equity in the enforcement of the aforesaid covenant, and an alleged written waiver of said covenant by the appellants.

[1] The admitted testimony as to the purported laches of the appellant Natale Avignone, as it appears in this record, is substantially the same as that in the record of the Castleman Case, supra. It will therefore be unnecessary to here further comment thereon, except to state that the same, in the opinion of the court, is not sufficient to constitute an estoppel. Various circumstances are urged as proving laches on the part of the appellant Abe Stein. Frank Lazarus, the owner of No. 2461 Eighteenth street, stated that he had a conversation with Stein in front of the Roumel building on December 22, 1924, in which he inquired of Stein whether there was any way in which Roumel might "come out" without being disturbed, and that Stein then told him that there was a way to come out by letting the bonding companies do the fighting; that Stein said "he could come out and how he would come out." On cross-examination, he admitted there had been bad feeling between him and Stein, and that they had not spoken to each other for two years previous; that he was interested very much in the result of the litigation, and had himself partially built out his building in April, 1923, in violation of the covenant. He further stated, in his affidavit attached to the answer herein, that he thereafter met Roumel and told him of this conversation, but does not state when he so informed him. Stein stated, as to this conversation, that he was going to work one morning at about 8 o'clock; that Lazarus tried to talk to him about Roumel bringing his building out; that he then told Lazarus, as he was running to catch the car, that he did not believe Roumel was going to build out;

and that he said nothing about a builder's bond.

[2] In addition to this conversation, a certain written purported agreement, dated November 26, 1921, and recorded February 3, 1925, was introduced in evidence. This instrument in writing is, in form, a revocation of the aforesaid covenant, and is signed and acknowledged, among others, by Abe Stein, the appellant. Filipo Baldi, a real estate agent, who was at the time of the date of the writing attempting to procure land upon Eighteenth street, N. W., near this restricted area, upon which to erect a theater building, caused the said instrument in writing to be circulated for signatures. He failed to obtain the signatures of all the owners, and thereafter the theater project was dropped, and the further interest of Baldi in the said instrument ceased. How it came to be recorded does not appear. This instrument provides therein: "Whereas, it is the wish and desire of the present owners of the lots in block No. 8 [now known as square 2560], affected by said building restriction that the same be abrogated and made null and void."

It is admitted that all the owners of land in said restricted territory did not sign said instrument, and that none of the appellants here signed the same, except Abe Stein. Stein testified that he signed the instrument on one occasion, when presented to him by Alfred Castleman, the appellant in Castleman v. Avignone, supra, and in the presence of a notary, Kathleen W. Noel, but with the express reservation, then expressed, that all the owners of lots in said restricted area should likewise sign the same. The notary testified she took the signature and remembered some conversation between Stein and Castleman, but does not know what it was. Castleman appeared as a witness in the case for appellee, but did not testify as to this conversation.

[3] This is substantially the testimony relied upon by appellee and which counsel argue constitutes an equitable estoppel herein as to the appellant Abe Stein. In this view we cannot concur. As to the conversation with the witness Frank Lazarus, if all that Lazarus testified to were admitted, it would lack much of constituting an equitable estoppel. In view of the manifest animus of the said witness, the feeling of mutual hostility existing, and the direct denial of the appellant Stein, there is much reason to doubt his testimony. As to the alleged written revocation, it is at best but an attempt by the owners of the lots in the restricted area to revoke the same, an effort which, to be successful, must have included all, and not a part, of said owners. Mutuality was of its essence, and this being absent, the said instrument was a nullity. In any event, it could not be binding upon the appellants Ethel Stein, Natale Avignone, and Corinne Avignone, who did not sign it. It had no evidentiary value, and it was error to admit it.

It is obvious that the appellee was not deceived by, or in ignorance of, the attitude of the appellants as to a proposed violation of the building line covenant. He had notice, through his architect and agent, that its violation would be vigorously opposed, before work was begun. He had full knowledge of the equities of the appellants. He attempted to get the permission of the appellant Stein. He rushed his work, and apparently evaded service of process, in order to finish his work before an injunction could issue and be effective. His conduct throughout is such as to induce the well-grounded belief that he does not come into a court of equity with clean hands. There is nothing in this record that leads to the conclusion that the appellants, or any of them, are estopped from seeking the aid of a court of equity, or that any of them have waived any right that might otherwise be claimed by them.

[4] We next come to a consideration of the testimony in this record as to the alleged change of character of the premises and neighborhood in question since the execution of the covenant of June 10, 1897. The testimony in this record relative to the alleged change of the restricted area from a residential to a business section is more voluminous than in the Castleman Case, supra. Several witnesses were called, who testified, over the continued objections and exceptions of the complainants in the court below, that the restricted area was originally improved with buildings used almost exclusively as residences, but that during the last few years business had gradually occupied the buildings, and that at the present time the same were not desirable for residence purposes, and were largely vacant and unoccupied. There is nothing in this testimony, except in volume, which was not before us for consideration in the Castleman Case, supra. We there called attention to the fact that there is nothing in the covenant itself that indicates it was intended to be applicable to residence properties only, and said: "This language is broad enough to include both business and residence properties, and for aught that appears in the instrument may have been so in-

tended." That conclusion is equally applicable here.

[5] The only variation from this general line of testimony was that of the witness Waddy B. Wood, who was permitted, over objection, to state "the purpose and object of the restriction, its advantage and disadvantage, what it provided, and what it was intended for," etc., although he had no personal knowledge of the language of the covenant, nor of the facts surrounding its making. For instance, he was permitted to testify: "That the restriction went with the deed, as he understands it, to keep the houses back from the street, residences, and give them a front yard; hence there would be no object to do it, or anything but except on a residence." There was more testimony on the same general lines. Plainly this testimony was subject to objection, and it was error to admit it. It amounted to nothing more than the conjecture of the witness, and his interpretation of the legal effect of the covenant, a duty which devolved upon the court.

[6] A very considerable part of the testimony in the record, admitted, in most part, over objection, was relative to the supposed effect which an enforcement of the restrictive covenant has upon the market value of the properties in question, and what the market value of the same would be if said covenant were partially or wholly waived or released. If the respective owners of the lots in this area may rightfully insist upon the inviolability of this covenant, either for business or residence purposes, then such testimony becomes entirely immaterial, and gives no aid to the court in the determination of the issues here involved. Equally immaterial was the testimony offered and admitted as to whether the erection of the extension of his building by appellee was, or was not, damaging to the appellants. If the appellants have an equitable right to maintain the covenant, then such right exists, entirely apart from the benefit or disadvantage to them arising therefrom.

We have examined this record with great care, and find no reason to come to any other conclusion herein than that announced by us in Castleman v. Avignone, supra.

The decree of the Supreme Court is therefore reversed, and the cause is remanded, with directions to enter a decree for injunction as prayed for in the appellants' bill of complaint, with costs, and for such other proceedings therein as equity may require. Judgment for the costs in this court will be entered against the appellee.