### TYSON v. MOORE et al.

### No. 8434.

Circuit Court of Appeals, Fifth Circuit.

Nov. 17, 1937.

J. M. Sapp, of Panama City, Fla., and Thos. B. Hill, Jr., of Montgomery, Ala., for appellant.

B. P. Crum, of Montgomery, Ala., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

Federal jurisdiction in this case is dependent wholly upon diversity of citizenship. The real controversy at the time the suit was filed was between Gladys Moore Tyson, appellant, a citizen of Florida, and her brother, L. H. Moore, a citizen of Alabama. The latter died after he had filed his answer to the bill of complaint, and the cause was revived and is continued against his executrix and executors. The controlling principles of law are well settled, and the facts are practically without dispute.

The subject of the controversy is a profit made by the brother on shares of corporate stock in an ice plant in Waycross, Ga., which were owned by their father, T. H. Moore, in his lifetime. The appellant, by her bill in equity, sought to charge her brother as trustee with the profit made by him on said shares; which he had acquired by purchase from the executrix of his father's estate, pursuant to the terms of an option to buy given him by his father during the latter's lifetime. The suit was dismissed by the District Court after a hearing on bill, answer, and proof. The only oral evidence introduced by either side was that of appellant herself. She also offered the answer of defendants as a part of her proof.

The father died testate on the 25th day of January, 1922, leaving a widow, sons,

and daughters, all adults, as heirs at law and beneficiaries under his will. The widow was nominated as executrix, qualified as such, and administered the estate until her death in 1924. With minor exceptions not necessary to be stated, all of the property of T. H. Moore was devised and bequeathed to his wife, Ella Moore, for life, with "full power to dispose of any of said property by investment or reinvestment." It was provided in the will that, upon the death of the widow, three-twentieths of the property remaining should vest in each of his three sons, L. H. Moore, T. H. Moore, Jr., and Randolph B. Moore, and that the remaining eleven-twentieths should vest in his son, L. H. Moore, as trustee for the following uses and trusts: To collect and receive the rents, income, and profits therefrom, and, after paying the expenses of the trust, to pay each of his daughters, Ella B. Moore McCoy and Gladys Moore Tyson, four-elevenths thereof for a period of ten years, and at the expiration of that period to pay over to each of them four-elevenths of the estate remaining. The trustee was authorized to continue to act for them for a longer period if they so desired. The remaining share was then to go to his son, L. H. Moore, as trustee for William R. Moore, a non compos mentis son of testator. Item 5 of the will is as follows:

"It is my will and I direct that that portion of my estate herein bequeathed, consisting of stock in Ice Companies, shall not be sold or otherwise disposed of by any of my children for ten years after my death, except with the consent in writing of my sons, L. H. Moore, Randolph B. Moore, and T. H. Moore, Jr., or of the survivor or survivors, in case one or more of them should die before the expiration of said ten-year period."

■ The lower court found that the stock was purchased in 1923 under a written agreement made in 1913 between L. H. Moore and his father, whereby each covenanted with the other that the one surviving should have the option of purchasing within one year the stock in said corporation owned by the deceased. The contract is assailed as invalid for want of consideration and indefiniteness, but we agree with the District Court that the mutual promises of the parties to sell were an adequate consideration, and that the terms of the sale were fully set forth in the written instrument. The stock is definitely described as that "owned by the deceased party to the contract, and standing in his name on the books of said company." The purchase price was fixed at $125 per share, upon the following terms: One-fourth cash, one-fourth in one, two, and three years, respectively, deferred payments to bear interest at 6 per cent. per annum; one-fourth of the shares of said stock to be surrendered upon the said cash payment, and three certificates calling for one-fourth of the said shares of stock each, to be issued to purchaser and indorsed by him, and each certificate to be attached to each note securing the same, and to be surrendered upon the payment of each of said notes.

■ We think the stock referred to was that owned by the parties and standing upon the books of the corporation at the date of the contract. This is a fair and reasonable interpretation of the words employed by the parties, and, so construed, the contract is definite and certain. If the language of a contract is fairly susceptible of two interpretations, it is the duty of the court to adopt that meaning which will uphold, rather than destroy, its validity. It was a necessary implication of the words employed by the parties that neither would dispose of any of the stock then owned by him except subject to the option. The slight departure from the terms of the option in substituting an interest-bearing note for the cash payment was fully authorized in the family conference. As the notes were paid in full upon maturity and the proceeds distributed to the heirs, including appellant, we agree with the District Court that there was a substantial compliance with the terms of the option.

■ A contention is made that, under the provisions of item 5 of the will, there could be no sale of this stock for a period of ten years from the death of the testator, but from a mere reading of this provision it seems clear that the testator did not attempt to restrict the right of his executrix to sell, but placed that restriction only upon his children. In addition, since the option was a contractual obligation binding upon the testator, it had precedence over the will as a matter of law.

Aside from the option, it is claimed by the appellees that the executrix had specific authority, under her husband's will, to dispose of any property of her testator without obligation of the purchaser to see to the proper application of the proceeds of such sale; but we deem it unnecessary to discuss this proposition, or the general power of

the executrix to dispose of the stock without an order of court, since we have held that the option was a valid and binding obligation upon the executrix, that it was substantially complied with, and that the sale took place under it.

■ It is true that L. H. Moore became trustee, under his father's will, after his mother's death, but his nomination as trustee in remainder was not enough. It was necessary for him to accept the trust in order to constitute him a trustee under the will. There is nothing to show that he accepted the trust before the death of his mother, when he became the latter's executor and also began to deal with the trust. It cannot, therefore, be said that he was acting as trustee in any capacity when he exercised the option to buy the Waycross stock. He might never have become trustee, as he might have declined to qualify as such or might have died before the period arrived for him to do so. We think he was acting purely as an individual when he acquired this stock. The transaction occurred during the year allowed for administration, and the stock had not then passed to the legatees of the will. The common law is that a legacy vests in the executrix and not in the legatees, until the executrix, having ascertained the condition of the estate, assents to the legacy. No assent, either express or implied, appears.

■ It appears from the administrator's accounts that the estate owed some debts, one for $5,000, and that the executrix, Mrs. Moore, in taking the notes of L. H. Moore in consummation of the sale of the stock as contemplated by the option, took them as executrix and they became assets of the estate, and not of herself as a life tenant with remainder to the other legatees. Therefore, the notes entered the trust, but the Waycross Ice Plant stock never did. The notes were fully paid and accounted for, the proceeds distributed, and the transaction approved by the probate court with the express consent of appellant. It is not denied that, before Moore exercised his option to purchase the Waycross stock, the family, including the executrix, met in conference about it and agreed for him to take the stock at the price named in the option. Appellant and her husband were present at this conference.

It would take a strong case of actual fraud to upset this sale, and we find in the record no proof of any fraud; in fact, there is no satisfactory proof that the stock, at the time of the sale, was worth more than the amount paid for it.

Affirmed.