**WIER et al. v. TEXAS CO.**
**LUDEAU v. TEXAS CO.**
**VIDRINE et al. v. TEXAS CO.**
**Civ. Nos. 1915, 2003, 2111.**

District Court, W. D. Louisiana,
Opelousas Division.
Aug. 18, 1948.

E. Herman Guillory, of Ville Platte, La., Malcolm E. Lafargue, of Shreveport, La., Joseph A. Loret, of Baton Rouge, La., Atlee P. Steckler, of Ville Platte, La., and George M. Wallace, of Baton Rouge, La., for plaintiffs.

L. K. Benson, Wiley G. Lastrapes and R. C. Milling, all of New Orleans, La., and, W. C. Perrault, of Opelousas, La., for defendant.

PORTERIE, District Judge.

These three suits were originally filed in the Thirteenth Judicial District Court, Evangeline Parish, Louisiana. They were removed to this court by the defendant,

The Texas Company, because of diversity of citizenship and the value of the matter in controversy.

The three cases are mutually admitted to be identical, have been consolidated, and this opinion will be written as if there were but one case.

The action is a petitory one; upon defendant's motion plaintiffs were ordered to produce copies of their title deeds.

Motions to dismiss were filed by the defendant; on these we withheld ruling, as follows:

"After reading the elaborate briefs and the cases cited therein, we are of the opinion that on some of the phases of the motions to dismiss, in order to be fair to both sides, evidence should be adduced. This, when followed, will practically put the case on the merits. Accordingly,

"The motions to dismiss herein will be passed upon by the court after the hearing on the merits; the court assuring the parties that the ruling on the motions to dismiss will be passed upon firstly, separately and apart from the case on the merits.

"Thus done, rendered and signed at Alexandria, Louisiana, this the 23rd day of October, 1947."

Upon the court's suggestion that a compromise be considered, mutually diligent efforts at a compromise were made but failed; this took months of time, extending beyond the time of filing the answer.

Then the defendant filed answers and alternative counterclaims (November 24, 1947), repeating as its first defense its original motions to dismiss because the complaints fail to state a claim against defendant upon which relief can be granted. This answer has with it twenty exhibits (D-1 to D-20) to support it.

It is only at the last argument of counsel, upon the motions for a summary judgment in favor of defendant, filed much later, that we came to know that the law of Louisiana does not forbid mineral servitudes to be owned by different persons or corporations at variously-defined depths in the same piece of land. Counsel on both sides, quite frankly, stated that was so; we were not aware of it. This had caused us much difficulty in considering the motions to dismiss and to decide whether or not the contract in this case left a mineral servitude in The Texas Company because an established line of separation at a depth of five hundred feet was fixed in the deed. Since we well know that there could be no separate estates in the same land, one mineral and the other real or superficial, and not knowing at the time that several mineral servitudes at varying stated levels may be held by different owners in the same land, it is only now that we see that the deed we have to interpret in this case leaves the plaintiffs the owners of the property in fee; but qualified to the extent that there is a mineral servitude left to The Texas Company, beginning at the depth of five hundred feet from the top and thence to the center of the earth. Conclusively and clearly, laboring under this misapprehension, we should not have delayed decision on the motions to dismiss, but should have sustained them. See Clement v. Dunn, 168 La. 394, 122 So. 122; Coyle, et al. v. North American Oil Consolidated, et al., 201 La. 99, 9 So.2d 473.

Then motions for summary judgment under Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c, were filed (April 30, 1948) by the defendant. The first paragraph reads, as follows: "That the pleadings, depositions and admissions on file, together with the affidavits hereinafter referred to, show that there is no genuine issue as to any material fact and that Defendant is entitled to a judgment as a matter of law, rejecting and dismissing the demands of plaintiffs herein."

The following affidavits are filed in support of the motions:

1. Affidavit of Mr. Leo LaFleur, Deputy Clerk of Court, dated April 26, 1948 with exhibits thereto attached.

2. Affidavit of Mr. C. E. Yates, dated April 22, 1948, with exhibits thereto attached.

3. Affidavit of Mr. R. C. Stewart, dated April 22, 1948 with exhibit thereto attached.

4. Affidavit of Mr. H. C. Comish, Assistant Secretary of State, dated April 16, 1948, with exhibits thereto attached.

5. Affidavit of Mr. Lawrence K. Benson, dated April 23, 1948, with exhibit attached.

The plaintiffs have filed the affidavit of E. B. Norman, Jr. to oppose the motion. The defendant filed objection to the admissibility of the facts, if any, contained in the affidavit on the various grounds of irrelevancy, immateriality, and as containing conclusions of law by the affiant; and all being irreparably tainted because tending to vary, alter and contradict written instruments, contrary to Article 2276 of the Louisiana Revised Civil Code.

On the 29th day of March, 1924 The Texas Company sold the land involved here to E. B. Norman & Co. and we extract from this act the following language: "* * * and the said E. B. Norman and Company agrees to purchase the surface of the following described tracts of land to the depth of Five Hundred (500) feet from the surface thereof and including the timber thereon * * *". And later in the act: "It is expressly agreed and understood that the conveyance of the land and timber herein referred to shall be only the surface of the land with the timber, said surface to extend to a depth of five hundred feet to a line drawn horizontally with the surface, and The Texas Company hereby reserves and excepts all the sub-soil below said depth and the gas, oil and other minerals therein contained, and with the right of ingress and egress on the surface to carry on operations for the development of said minerals."

By an act dated May 13, 1924, The Texas Company sold the land involved here to E. B. Norman & Co. This act contains the following clauses:

"It is expressly understood and agreed that all of the subsoil, or subjacent lands of said tracts of land, together with all of the oil, gas and other minerals therein, underlying and below a line or plane drawn horizontally at a depth of five hundred (500) feet from the surface of said tracts of land, is hereby excepted and reserved by said The Texas Company from and apart from the lands conveyed; that said The Texas Company also reserves and retains, and the said E. B. Norman & Company grants to the said The Texas Company the right of ingress and egress on, across and through the surface of the said tracts of land conveyed, being in depth five hundred (500) feet from the surface of said tracts of land to a horizontal line or plane drawn through said tracts of land; and also the right of reasonable occupation and possession of the same for the drilling of wells, erection of structures, laying of pipe line, or lines, storage tanks, reservoirs and other works thereon necessary and incidental for carrying on operations for the development and production of said minerals, or any of them in and from said subsoil, or subjacent lands reserved and excepted from the tracts of land hereinabove sold.

"It is further expressly mutually understood and agreed by the parties hereto that were it not for this reservation and exception of the subsoil from the lands herein granted and sold, and of all the minerals aforesaid therein contained, this sale and conveyance would not have been made."

The proper interpretation and effect of these clauses are the meat of the questions involved in these cases. Concurrently, since the three actions are petitory in nature, under the law of Louisiana, the plaintiffs must recover on the strength of their own title and defendant's title is not at issue until the plaintiffs have disclosed an apparent valid title in themselves. Simmons et al. v. Carter et al., 186 La. 377, 172 So. 425.

On February 11, 1929, there was executed between E. B. Norman & Co. and The Texas Company an agreement (dubbed mutually by counsel "Extention Agreement") with respect to the lands and minerals of May 13, 1924. After a description of the same lands and after a repetition of the same paragraph in reference to the reservations made in favor of The Texas Company as were contained in the original deed of May 13, 1924, this Extension Agreement then recites:

"Whereas, in consideration of said money advance and the other concessions made by said The Texas Company in said amended and supplemental agreement of date the 11th day of February A.D. 1929, to which supplemental agreement reference is here made for a fuller explanation and certainty, said E. B. Norman and Company, appearer herein, acknowledging the sufficiency

and adequacy of said consideration for the purpose hereof, does by these presents, for itself, its successors and assigns, take notice of the reservation in said deed of date May 13, 1924, hereinbefore referred to and described, whereby said The Texas Company has reserved to itself, its successors and assigns, the subsoil or subjacent lands of said tracts of land, together with all of the oil, gas and other minerals therein and underlying the surface of said described tracts of land, together with the right of ingress and egress on, across and through the surface of said tracts of land conveyed, and also the right of reasonable occupancy and possession of same for the drilling of wells, erection of structures, laying of pipe line or lines, storage tanks, reservoirs and other works thereon necessary and incidental for carrying on operations for the development and production of said minerals or any of them in and from said subsoil or subjacent lands reserved and excepted from the tracts of land conveyed by said deed, hereinbefore referred to and described, and said appearer does by these presents acknowledge the present ownership of said subsoil and subjacent land and of all oil, gas and other minerals in and underlying the surface of the tracts of land hereinbefore referred to and described, together with all rights of ingress and egress for all purposes of development and production of said minerals, or any of them, as being fully vested at this date in The Texas Company, a corporation of the State of Delaware, its successors and assigns, to the same extent and as fully and completely as though said reservation of said subsoil and said minerals and mineral estate and rights thereunto appertaining has been made, executed and delivered as of this date; and appearer further declares that this acknowledgment is made and executed in furtherance of its agreement with said The Texas Company for the purpose of granting anew said rights to said The Texas Company, its successors and assigns, and that this instrument shall act and is intended to operate as an interruption of any prescription that may have accrued or that may be accruing against said The Texas Company or against said reservation and exception of the minerals in and underlying said described tracts of land, and the right to enter upon said lands hereinbefore described and in said deed described and develop the same for said minerals, oil and gas, or any of them, and to produce the same therefrom, together with all other rights incidental thereto or thereunto appertaining, and to perpetuate and to continue all of the rights, privileges and estates granted to or reserved by said The Texas Company in said deed of date May 13, 1924, and to that end appearer herein does by these presents and for the consideration hereinbefore referred to, which it now declares to be sufficient and adequate for the purposes thereof, grant, bargain, sell, assign, convey and deliver unto said The Texas Company, a corporation of the State of Delaware, its successors and assigns, all of said minerals, mineral estate, rights and privileges hereinbefore referred to and described and reserved and excepted in said deed of date May 13, 1924, hereinbefore referred to and described, and declares all of said minerals, oil and gas to be fully and completely vested in said The Texas Company, a corporation of the State of Delaware, its successors and assigns, and to the same effect and purpose and with the same benefits, rights and privileges accruing to said The Texas Company as though said deed of date May 13, 1924, with reference to said subsoil, mineral estate and mineral rights, had been originally executed as of this date."

Though the three contracts dated March 29, 1924, May 13, 1924 and February 11, 1929, basically all treat of the sale of large tracts of property (approximately 14,600 acres), excluding minerals, for the consideration of $438,000, $100,000 cash and the rest on time payments, there are a few additions or changes, explanation of which is necessary. Consistently, in all three of the contracts, provision is made for the cutting of tupelo gum by the E. B. Norman & Co. in an estimated quantity of 20 million feet and at a manufactured price of $22 per thousand.

The main difference between the contract of March 29, 1924 and that of May 13, 1924 is that in the former reference only is made to the lands sold, the language being, "said lands being known as the Black and Friedlander tracts"; but in

the latter itemized full description with metes and bounds are given. There is, too, in this latter contract the provision that if for any reason the cutting of tupelo gum lumber be discontinued at any time, the contract of sale is not vitiated and the purchase price continues to be exigible in amounts and at maturities as before.

The contract of February 11, 1929, first rehearses the basic provisions of the other two previous contracts, then adds several important points: (1) One is that $8 per thousand will immediately be advanced by The Texas Company to the E. B. Norman & Co. before the lumber be manufactured —it is called a "money advance"; (2) the cutting period is extended and a particular provision is added to the effect that the E. B. Norman & Co. may cut tupelo gum on other lands, which timber, whether in stumpage or in manufactured state, remains the property and under the absolute control of E. B. Norman & Co.; and, (3) the mineral rights involved are renewed as of that date, thus adding to the life of the contract.

It is to be noted that if 22 million feet of tupelo gum be found on these tracts, as estimated, this computed at the price of $22 per thousand will make a total of $484,000 approaching and sufficient to pay the actual sale price of the property.

E. B. Norman and Company went into receivership. On March 24, 1934, at a sale by public auction, the receiver of E. B. Norman and Company sold the property of E. B. Norman and Company in lots, and executed an act evidencing that sale. At the latter sale, the receiver of E. B. Norman and Company sold the above referred to tract of land to the receiver of the National Bank of Kentucky of Louisville, Kentucky. At a public auction held on February 27, 1941, the receiver of the National Bank of Kentucky sold various parcels of the bank's property to various purchasers, the lands involved here being bought by the plaintiffs herein.

The deeds by Anderson, Receiver, in the Ludeau and Vidrine cases, and the correction deed by Anderson, Receiver, in the Wier case, after describing the property and reciting that the conveyance was made pursuant to a sale at public auction, recite:

"It is understood and agreed by and between the parties hereto that all the right, title and interest in and to the land, timber, and minerals, now owned by A. M. Anderson, Receiver, National Bank of Kentucky of Louisville, is to be conveyed, and with the understanding that his right, title and interest to the minerals have not been proven.

"Being part of the same property designated as Lot 'A' acquired by A. M. Anderson, Receiver, National Bank of Kentucky of Louisville at judicial sale on March 24, 1934, in the matter entitled Paul C. Keyes, Receiver, National Bank of Kentucky of Louisville, vs. E. B. Norman & Company, Inc. No. 3542 Civil Docket, Thirteenth Judicial District Court, Parish of Evangeline, State of Louisiana. Recorded in Book No. B-27 page 397."

This deed, by which Anderson, Receiver, acquired, recited that the lands had been advertised for sale, "in separate lots as hereinafter set forth, and on the terms and conditions hereinafter mentioned". These terms and conditions appear immediately following the description of the lands, as follows:

"Terms and Conditions.

"The said lots will be offered and sold separately to the last and highest bidder, for cash, but subject to appraisement, and which appraisement is to be announced at the time each lot is offered for sale, or seen at any time before sale in the record of the proceedings above numbered and entitled, at the Court House at Ville Platte, La. The parcels of ground comprising Lot 'A' consisting of lands acquired by E. B. Norman & Co., Inc. from the Texas Company and in which act of sale the Texas Company reserved and now has by appropriate extensions the oil and mineral rights on said lands, and the parcels of land composing Lot 'A' are to be sold subject to the oil and mineral rights of The Texas Company, or its successors, in said lands."

Then follows the recital that the various properties offered at the public sale were adjudicated to the said Anderson, Receiver.

An examination of the state court's commission to sell, attached to this deed, discloses that the above quoted "Terms and Conditions" were incorporated in the proces verbal of this public sale because the commission to sell, issued by the Thirteenth Judicial District Court, Evangeline Parish, Louisiana, had specified that said property was to be sold on the terms and conditions above quoted which appear in the receiver's deed.

The Texas Company has kept its rights in force by drilling and producing operations to this date.

■ The receiver's deed is a further acknowledgement and interpretation by E. B. Norman & Co. that The Texas Company had originally reserved and then owned the minerals underlying the property. More than that, it constitutes a similar acknowledgement, recognition and construction on the part of the judge and the clerk of the state court. More, Anderson, Receiver of the National Bank of Kentucky, signed the deed and he and these plaintiffs, who are claiming through him, are bound by all the recitals of the deed, including the "terms and conditions" above quoted. It follows, therefore, that plaintiffs are without any interest to prosecute these suits and being privies to the receiver's deeds are estopped and precluded from claiming any interest in the minerals. See, Gaines v. Crichton, 187 La. 345, 174 So. 666; Watson v. Succession of Barber, 105 La. 456, 29 So. 949; Karcher et al. v. Karcher, 138 La. 288, 70 So. 228; Reliance Homestead Association v. Brink, 173 La. 331, 137 So. 52; Lewis v. King, 157 La. 718, 103 So. 19; Sandifer v. Sandifer's Heirs, La.App., 195 So. 118; Gipson, et al. v. Gipson, 193 La. 807, 192 So. 355, Commercial Germania Trust and Savings Bank v. White, 145 La. 54, 81 So. 753; and Words and Phrases, Perm.Ed., Vol. 33, page 799.

Or, to repeat the point by reference to specific language of the documents:

The property that was sold by Anderson, Receiver, is to be certainly explained by the property that Anderson, Receiver, had to sell and that is discovered by looking at the sale made to him. From reading the "Terms and Conditions" in the deed to Anderson, Receiver, it is shown definitely that both the receiver of the Norman Company and Anderson, Receiver, (both of whom signed the deed dated March 24, 1934) fully recognized that The Texas Company had theretofore "reserved", "by appropriate extensions" then owned, all of the oil and mineral rights in and under all of the lands comprising Lot "A", including lands described in this suit, and that said lands were "sold subject to the oil and mineral rights of The Texas Company, or its successors in said lands".

■ So, it follows clearly that the plaintiffs never had the minerals; and their action being petitory in character their suit falls; they had no title at all. To repeat: Anderson, the receiver, never acquired any title to the minerals in and under the property described in these suits. Having never acquired he was incapable to convey title to the minerals to the plaintiffs.

In the case of Levy v. Crawford, Jenkins & Booth, Limited, et al., 194 La. 757, 761, 194 So. 772, 773, we find: "In Lee et al. v. Giauque, 154 La. 491, at page 493, 97 So. 669, at page 670, this court said: 'We are of opinion that the exercise upon any part of a continuous tract of land of a servitude extending over the whole tract preserved the servitude over the whole for the reason that there is but one servitude on the whole tract.' See, also, Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33; Connell v. Muslow Oil Co., 186 La. 491, 172 So. 763."

■ So, conclusively, The Texas Company has kept its rights in force over the whole area involved by drilling and producing operations on a part.

But counsel for the plaintiffs take the position that the reservation contained in the deed from The Texas Company to the Norman Company, aforequoted, and the grant anew of this same reservation in the Extension Agreement was not in fact a reservation of the oil, gas and other minerals, but an attempt to create two corporeal estates, the surface and subsurface. They say that this cannot be done in Lou-

isiana and that the reservation in the original deed and in the Extension Agreement are ineffective.

We cannot follow this reasoning because the parties to the deed of May 13, 1924 and to the Extension Agreement of February 11, 1929 have construed them to mean that The Texas Company owns the mineral rights. Article 1956 of the Louisiana Revised Civil Code says: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." See, L. P. Davis Const. Co. v. Board of Commissioners, 207 La. 590, 21 So.2d 753; Angelloz v. Foret, et al., 177 La. 802, 149 So. 460; M. M. Ullman & Co. v. Levy, 172 La. 79, 133 So. 369; Shoreline Oil Corp. v. Guy, et al., La.App., 189 So. 348.

We now quote extensively from the brief of counsel for defendant:

"Apply the rule of Article 1956 to the facts of the cases at bar. Here The Texas Company executed the deed to E. B. Norman & Co., Inc. on May 13, 1924, containing a reservation which the plaintiffs now say is not a mineral reservation, but 'an attempted subsoil reservation. On February 11, 1929, the Norman Company and The Texas Company extended the original reservation, granted it anew, and declared that prescription was interrupted. The Texas Company construed the instruments to mean that it owned the mineral rights. That this is true, is amply shown by the allegation which appears in each of the complaints that The Texas Company 'claims the ownership of all of said oil, gas and other minerals by virtue of' the reservation in the deed of May 13, 1924 and the Extension Agreement; and the allegation that The Texas Company has conducted drilling and producing operations on the land. These operations were begun, according to the complaint in the Wier case, as early as October 1938,—prior to any of the sales made by Anderson, Receiver, to the plaintiffs. These allegations therefore, clearly show that The Texas Company's construction of the reservation in its deed of May

13, 1924 and of the Extension Agreement of February 11, 1929, was that it owned the mineral rights.

"Was that construction assented to expressly or impliedly by the other party to the agreements—the Norman Company? It certainly was! the deed which the receiver of the Norman Company executed to Anderson, Receiver, declared, in terms, that The Texas Company had 'reserved * * * the oil and mineral rights'. That declaration, the Court will find by examining the deeds in the records, referred to and only to the reservation in the deed of May 13, 1924. This, therefore, was an express assent by the Receiver of the Norman Company to the construction placed on the reservation in that instrument by The Texas Company. It was an acquiescence in the construction that The Texas Company had 'reserved' by that deed 'the oil and mineral rights'. Further, the deed by the Receiver of the Norman Company to Anderson, Receiver, declared, in terms, that The Texas Company 'now has by appropriate extensions the oil and mineral rights' and the lands were sold 'subject to the oil and mineral rights of The Texas Company'. The 'appropriate extensions', the Court will find by examining the deeds in the records, referred to and only to the Extension Agreement of February 11, 1929. Here again is an express assent by the Receiver of the Norman Company, (which Company was the other party to the Extension Agreement), in the construction placed on the Extension Agreement by The Texas Company, (the other party to that Agreement). It was an acquiescence in the construction that The Texas Company had, 'by appropriate extensions the oil and mineral rights'. From this, it follows that such construction of those instruments is conclusive and, of itself, establishes the ownership of The Texas Company of the oil, gas and mineral rights in the properties."

In particular, the case of Clement v. Dunn, 168 La. 394, 122 So. 122, sustains the above premise and conclusion of the attorneys.

But, above all, the language of the original deed and the Extension Agreement

reserves to The Texas Company a mineral servitude over the property.

To sustain this ruling, we first begin with the basic cases of Strother v. Mangham, 138 La. 437, 70 So. 426; Bodcaw Lumber Co. v. Cox, et al., 159 La. 810, 106 So. 313; Frost-Johnson Lumber Co. v. Salling's Heirs, et al., 150 La. 756, 91 So. 207; Wemple v. Nabors Oil & Gas Co., et al., 154 La. 483, 97 So. 666; but, more to the specific point, conclude with the cases of Goldsmith v. McCoy, et al., 190 La. 320, 182 So. 519; and, Iberville Land Co. v. Texas Co., 14 La.App. 221, 128 So. 304, 306.

Plaintiffs must fail for the following language taken from the Iberville Land-and Texas Case, supra, dislodges them from their main contentions: "This is sufficient authority, we think, for us to hold that in their effort, no doubt well intended, to create by their agreement two different land tenures or estates out of the same property, the parties were attempting to do a thing that was a legal impossibility. The purported sale of the subsoil therefore was nothing more than the ordinary oil or mineral lease with all the rights of servitude which generally accompany it."

The law does not call for the serious penalty of causing a vendor as in the instant case to lose his whole title to property when his effort is to create two different tenures, and only selling the upper or superficial estate. For the penalty to be exacted would enrich the vendees (as in the instant case) undeservedly—and, consequently, illegally—in that they would acquire the minerals here, worth hundreds of thousands of dollars, without having bought them and without having paid a cent for them.

To counter the motion for a summary judgment, the plaintiffs have filed the affidavit of E. B. Norman, Jr.

■ The defendant has objected to the admissibility of statements in this affidavit insofar as they may constitute an attempt to vary, alter or contradict by parol evidence the terms of the written agreement of March 29, 1924 (Exhibit D-5) and the deed of May 13, 1924 (Exhibit D-6). This objection we must sustain. Hanby v. Texas Company, 140 La. 189, 72 So. 933; Walker v. Ferchaud, 210 La. 283, 26 So.2d 746; Monroe Inv. Co. v. Ford, 168 La. 475, 122 So. 586; Locascio v. First State Bank & Trust Co., 168 La. 723, 123 So. 304.

Also, objection has been made because the statements are irrelevant and immaterial. Particularly is this latter objection urged to the following statement: "From the discussions by Judge Story and other persons present at this meeting it was the general understanding of all that a mere sale of the surface 500 feet of the land, and The Texas Company reserving all lands below 500 feet would probably not be a legal and enforceable reservation. However, in order to satisfy Mr. Drake of The Texas Company, my father, as President of E. B. Norman & Company executed the agreement."

■ This is a conclusion of young Norman, of hearsay character, and not a statement of fact; not to mention being irrelevant and immaterial; and, finally, it is language designed through parol evidence (of patent inadmissibility) to vary, alter or contradict the terms of the two written instruments. These objections, singly and collectively, are sustained. Rock Island, A. & L. R. Co. v. Gournay, et al., 205 La. 125, 17 So.2d 8; Rock Island, A. & L. R. Co. v. Guillory, et al., 205 La. 154, 17 So.2d 17; Metropolitan Life Insurance Company v. Olsen, 81 N.H. 143, 123 A. 576, 32 A.L.R. 1472, 1478; Cox v. McKinney, 212 Mo.App. 522, 258 S.W. 445; Cross v. Aby, et al., 53 Fla. 311, 45 So. 820; Avignone, et al. v. Roumel, 56 App.D.C. 320, 13 F.2d 292.

■ Further, the statement, "E. B. Norman & Company never received anything from The Texas Company for signing said agreement dated February 11th, 1929", is objected to as a conclusion. Sustained.

■ However, pretermitting again, we must note that in the same paragraph young Norman states that E. B. Norman & Co. did receive money advances as a result of the agreement of February 11, 1929. That is sufficient consideration for the extension. But that is not all; additionally, $8 per thousand feet of tupelo

gum lumber was paid by The Texas Company in such quantity, when added to the additional $14 to make the $22 of agreed manufactured price, so young Norman states, that the main indebtedness of E. B. Norman & Co. was paid in that manner. This is certainly consideration, again, to E. B. Norman & Co., for signing the Extension Agreement.

■ So, the whole affidavit of Mr. E. B. Norman, Jr. is of no legal value; the contents not being " * * * such facts as would be admissible in evidence * * *". Federal Rules of Civil Procedure, rule 56 (e), 28 U.S.C.A. following section 723c.

But, pretermitting the above ruling, let us admit the statements of the affidavit in evidence, to obviate the sending back on appeal of the case, should we have erred in barring the contents of the affidavit.

Norman, Jr. in his affidavit does not deny the detailed and relevant facts in the five affidavits filed for the defendant. He states that the " * * * agreement of sale referred to herein, dated March 29, 1924, evidences the actual agreement of the parties relative to the conveyance * * *", of May 13, 1924; admits that the E. B. Norman & Co. was interested only in the timber; that "E. B. Norman & Company agreed that as they had no particular interest in real estate it would be agreeable to withdraw the land and sell only the timber"; that "E. B. Norman & Company, being interested only in the timber and surface of the land, agreed to Judge Story's suggestion that the sale should include only the surface 500 feet of the land with all timber thereon and that all lands below 500 feet should be retained by The Texas Company."

Young Norman's statement is free of any indication that E. B. Norman & Co. desired, intended or wanted to buy the minerals; to the contrary he says, "This agreement was perfected and reduced to writing on March 29, 1924, wherein it was especially agreed and understood that the sale should include a conveyance of timber and the surface of the land only", and that, "The agreement of sale referred to herein, dated March 29, 1924, evidences the ac-

tual agreement of the parties relative to the conveyance, * * *".

These latter statements dovetail closely with the provisions of the contract: " * * * that the conveyance of the land and timber herein referred to shall be only the surface of the land with the timber, said surface to extend to a depth of five hundred feet to a line drawn horizontally with the surface, and The Texas Company hereby reserves and excepts all of the subsoil below said depth and the gas, oil and other minerals therein contained, and with the right of ingress and egress on the surface to carry on operations for the development of said minerals".

■ Evidently, Norman's affidavit does not give birth to a disputed fact. Therefore, the issue is one of law. In such a situation our directive is found in the following language of the case of Drainage Dist. No. 1 of Lincoln County, Neb., et al. v. Rude, et al., 8 Cir., 21 F.2d 257, 263: "In this case the agreement is in writing and is complete. The prior statements and negotiations of the parties are merged in the agreement. Brawley v. United States, 96 U.S. 168, 173, 24 L.Ed. 622; Simpson v. United States, 172 U.S. 372, 19 S.Ct. 222, 43 L.Ed. 482; Sells v. City of Chicago, 229 U.S. 616, 33 S.Ct. 776, 57 L.Ed. 1353; Parks & Co. v. Howard Hotel Realty Co., 200 Iowa 479, 203 N.W. 247; Zack v. Gans, Sup., 128 N.Y.S. 737; Rosenberg v. Kazemier, 79 Misc. 44, 138 N.Y.S. 1070. There is no substantial dispute as to material facts and circumstances surrounding the making of the contract. The provisions used, or ones similar to them and having substantially the same meaning, have received judicial construction and are recognized as referring to changes which do not materially alter the work contracted for. We think it is clear that there was no question of fact to be submitted to the jury."

See also: Schloss Bros. & Co. v. Charles Stern Co., et al., 5 Cir., 1929, 36 F.2d 628.

Now as to the agreement of February 11, 1929, Mr. Norman in his affidavit makes no issue of fact. E. B. Norman, Jr. admits that E. B. Norman & Co. received the money advances. He says, "As a result of the agreement dated the 11th day of

February, 1929, * * * The Texas Company thereafter paid E. B. Norman & Company Eight Dollars ($8.00) per thousand feet on the tupelo gum lumber cut for The Texas Company * * *".

We repeat that no undisputed fact arises from the affidavit of Mr. Norman, by comparing what he puts into the case orally and extraneously through his affidavit to the contents of the written instrument of February 11, 1929. Norman reaffirms the written instrument, so-called "Extension Agreement".

Now, with the disputed written instruments and the undisputed facts before us, is the allegation contained in plaintiffs' petition that the reservations in the deed of May 13, 1924 and the Extension Agreement of February 11, 1929, are "null, void and of no effect", true or not true?

■ We take the position that regardless of whether the instruments are considered to be ambiguous or unambiguous, there is but a question of law to decide. In Vol. 53 of American Jurisprudence, page 212, section 246, verbo "Trial", we find: "The weight and the validity of, and the inference to be drawn from, a written document are for the court where the terms are undisputed, although it may be ambiguous on its face."

Judge Learned Hand in the case of Companhia De Navegacao Lloyd Brasileiro v. C. G. Blake Co., Inc., 2 Cir., 34 F.2d 616, 618 (omitting the facts for the sake of brevity), said: "The facts being undisputed, it was for the court to construe the written words."

In the same tenor the court said in Colonial Ice Cream Co. v. Interocean Mercantile Corporation, 3 Cir., 296 F. 316, 319, as follows: "The construction of the contract and delivery order was for the court, and not the jury. Whether or not the possession and presentation of that order to the delivery clerk of the carrier would have entitled the defendant to receive the sugar depended, not upon collateral facts and circumstances, but upon the provisions of the contract and delivery order themselves. There was no dispute about the facts. The legal effect of those instruments

was for the court, and not the jury. West v. Smith, 101 U.S. 263, 270, 25 L.Ed. 809; Hamilton v. Liverpool, London & Globe Insurance Co., 136 U.S. 242, 255, 10 S.Ct. 945, 34 L.Ed. 419; Hughes v. Dundee Mortgage Co., 140 U.S. 98, 104, 11 S.Ct. 727, 35 L.Ed. 354." See, also, 53 Am.Juris. 224, Sec. 366, verbo "Trial", and Sec. 270, p. 229; Stevens v. Hollister, 18 Vt. 294, 46 Am.Dec. 154; Reynolds v. Massey, 219 Ala. 265, 122 So. 29, 35.

■ The Fifth Circuit Court of Appeals has time and again held that where a contract is fairly susceptible of two interpretations, "* * * it is the duty of the court to adopt that meaning which will uphold, rather than destroy, its validity." Tyson v. Moore, et al., 5 Cir., 92 F.2d 741, 743; Connecticut Gen. Life Ins. Co. v. Boseman, 5 Cir., 84 F.2d 701; Lubbock Hotel Co., et al. v. Guaranty Bank & Trust Co., et al., 5 Cir., 77 F.2d 152; Automatic Sprinkler Co. of America v. Sherman, 5 Cir., 294 F. 533; American Sugar Refining Co. v. Newman Grocery Co., 5 Cir., 284 F. 835; LaGrange Grocery Co. v. Lamborn and Co., 5 Cir., 283 F. 869; Border National Bank v. American National Bank, 5 Cir., 282 F. 73; Cole Motor Car Co. v. Hurst, et al., 5 Cir., 228 F. 280.

Now, as to the cases cited for plaintiffs: (a) The case of Brown & Co. v. M'Gran, 14 Pet. 477, 10 L.Ed. 550, a contract that had grown through commercial correspondence was to be given meaning. The situation here is entirely different; plaintiffs' suits are petitory actions; they involve the validity of reservations contained in formal written instruments; so the above case is clearly not in point. (b) In the case of Burdell, et al. v. Denig, 92 U.S. 716, 23 L.Ed. 764, the facts were in dispute and it followed that the case should go to the jury. (c) In the case of Rankin v. Fidelity Insurance Trust & Safe Deposit Co., 189 U.S. 242, 23 S.Ct. 553, 47 L.Ed. 792, the Supreme Court held that the jury should decide whether the defendant was the owner or pledgee of the stock and there were disputed facts in the case, one set pointing one way and the other set pointing the other way, all to be drawn from and concluded by commercial correspondence.

There is only one question to answer in the instant petitory action, based on written instruments, having the dignity of authentic acts (notary and two witnesses), and that question is: Have these plaintiffs shown a valid title to the minerals?

Plaintiffs do not allege fraud or error; nor do they allege forgery. Article 2236 of the Louisiana Civil Code of 1870 provides: "The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

█ Finally, the plaintiffs contend in their brief on this motion in opposition of the motion for summary judgment in favor of defendant that they " * * * have considerable evidence to offer to support the interpretation of. these clauses, which we contend conforms to the intention of the parties." This is equivalent to holding back evidence, and on this point see the case of Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469, 473 (suit on an insurance policy), wherein the motion for a summary judgment is opposed upon the possibility that upon the trial the doctors might testify that the consultations were about inconsequential ailments. We quote the following from this case: "In the present case we have from the plaintiff not even a denial of the basic facts, but only in effect an assertion that at trial she may produce further evidence, which she is now holding back, to controvert the legal deduction from the New York statute and decisions that the conceded misrepresentations of the application are material. If one may thus reserve one's evidence when faced with a motion for summary judgment there would be little opportunity 'to pierce the allegations of fact in the pleadings' or to determine that the issues formally raised were in fact sham or otherwise unsubstantial. It is hard to see why a litigant could not then generally avail himself of this means of delaying presentation of his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions."

The Fifth Circuit Court of Appeals, in the case of Board of Public Instruction for County of Hernando, State of Florida, v. Meredith, et al., 119 F.2d 712, 713, wherein opposition to a motion for summary judgment was based on the contention "that they were deprived of an opportunity to cross examine the witnesses", said: "The intent and purpose of Rule 56 is to promote the prompt disposal of actions in the interest of justice where there is no genuine issue as to any material facts. See Holtzoff, New Fed.Procedure, pp. 143 et seq. It provides for summary judgment on the pleadings, supported by affidavits. * * * It was entirely in keeping with the letter and spirit of Rule 56 that this could be done by ex parte affidavits which were not offset by opposing affidavits. Port of Palm Beach Dist. v. Goethals, 5 Cir., 104 F.2d 706." See, Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 147 F.2d 399.

█ We conclude, accordingly, that there is no genuine issue as to any material facts; the only questions are on matters of law. And, as aforesaid, for any one or all of the reasons given, the motions for summary judgment are sustained.

### Addenda.

█ a. The complaint of plaintiffs sets out an additional fault in the defendant's title. The two immediately-previous ancestors in title of the defendant—Black and Friedrich—are named (Article V(A) of complaint), the context being as follows: "That on the date of execution of said deed and purported reservation, May 13, 1924, and on the date of execution of said 'Extension Agreement', February 11, 1929, all of the oil, gas and other minerals under said land were owned by Lewis C. Black, defendant's author in title, he, having reserved the same in his. deed to William H. Friedrich on April 4, 1919, filed and recorded April 10, 1919, and fully described in section 5 of Article 2 of this petition." In the deed from Black to Friedrich appears the following paragraph, the sole source of the contention: "It is agreed and understood that the oil and mineral rights and all other reservations are hereby reserved

and perpetuated in all cases where such oil and mineral rights and reservations have been reserved in deeds to the vendor or in the mesne conveyances, to the same extent as such reservations appear in any such deeds." The inference by plaintiffs from this is. that the defendant never did acquire the minerals to begin with. At first argument held on the motions to dismiss, it was mutually admitted that Black by the language above meant to protect himself from promising the minerals in the sale to Friedrich if in his deeds of acquisition his vendors had reserved the minerals. No such former reservations exist. Nothing has been heard of the point since; it is granted now that the defendant originally acquired the minerals when it bought the full title in fee.

b. We doubt that in these motions for a summary judgment there becomes included a point that was seriously urged under the motions to dismiss. Since the strength of plaintiffs' title is the issue and not the weakness of defendant's title—the action being petitory—the defendant had urged that the United States District Court for the Western District of Kentucky, where the Bank receivership was lodged and under whose order the property herein was sold, was not the "court of record of competent jurisdiction," U.S.C.A., Title 12, Chap. 2, Sec. 192.

██ This argument is not frivolous. See, Ex parte Chetwood, 165 U.S. 443, 457, 17 S.Ct. 385, 41 L.Ed. 782, 787; Roth v. Hood, 6 Cir., 106 F.2d 616, 617, 618; Hulse v. Argetsinger, 2 Cir., 18 F.2d 944, 946; Mitchell v. Joseph, 7 Cir., 117 F.2d 253, 255; Griggs v. Baumer, 3 Cir., 130 F.2d 899; Reibman v. Federal Deposit Ins. Corporation, D.C., 66 F.Supp. 409, 410; Am. Juris., Vol. 7, page 527, Sec. 732, verbo "Banks". "Federal Courts are courts of limited jurisdiction, having only such jurisdiction as is expressly conferred by statutes." Rambo v. United States, 5 Cir., 145 F.2d 670, 671, certiorari denied 324 U.S. 848, 65 S.Ct. 685, 89 L.Ed. 1408. Article III, Section I, U.S.Const.; Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246, 250; Ex parte Bakelite Corporation, 279 U.S. 438, 449, 49 S.Ct. 411, 73 L.Ed. 789, 793; Federal Radio Commission v. General Electric Company, 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969.

The defendant urged that the approval should have been by the State District Court, Parish of Evangeline, State of Louisiana, where the property to be sold was situated.

██ In some cases the courts have assumed that the United States District Court is vested with jurisdiction to enter the orders provided for by Section 192, Title 12 U.S.C.A. We adopt the latter position and we overrule the contention of the defendant. See Whelan v. Blaskenbeckler, 5 Cir., 87 F.2d 81; Armstrong v. Woolley, 5 Cir., 89 F.2d 295.

## End of Addenda.

This written opinion is not all-encompassing; we have studied the pleadings; we have read attentively and fully the briefs of counsel; before signing a judgment sustaining the motions for summary judgment in favor of the defendant, we request counsel for defendant company to submit to us their suggested findings of fact and conclusions of law, covering the motions at issue. We shall adopt them in part or in whole, add or subtract, etc. After these are signed and filed by us, we shall then sign the judgment in favor of defendant. The time allowed counsel for this will be fixed after discussion and to the knowledge of all parties.